06-HQ-NW-014

**DEFENSE COMMISSARY AGENCY**
**DISCRIMINATION COMPLAINT**

UIC

FOR AGENCY USE
RECEIVED

**PRIVACY ACT STATEMENT**

**Authority:** Title VII, United States Code. Privacy Act of 1974 (5USC 552a). **Purpose:** To collect information to permit processing of a formal discrimination complaint. **Use:** The information on this form may be used (a) in the processing and adjudication of the Complaint and any appeal concerning the complaint and (b) as a data source for production of summary descriptive statistics and analytical studies of complaint processing and resolution efforts. **Disclosure:** Voluntary; however, failure to provide requested information may lead to a delay in processing or to a dismissal of this complaint.

**1. COMPLAINANT'S FULL NAME** *(Last, First, MI)*: SELLERS RosEzola

**COMPLAINANT'S SSN**: [redacted]

**2. TITLE, SERIES & GRADE OF YOUR JOB**: CAO SPECIALIST 1144 GS-5

**3. HOME ADDRESS**
Street [redacted]
City
State
Zip Code [redacted]

**5. WORK ADDRESS**
Street WhiPPLE STREET
City NewPORT
State RI
Zip Code

**4. HOME PHONE** [redacted]

**6. WORK PHONE** 401-841-2111

**7. NAME AND TITLE OF PERSON(S) YOU BELIEVE DISCRIMINATED AGAINST YOU AND THEIR ORGANIZATIONAL UNIT**

| NAME | TITLE | ORGANIZATIONAL UNIT |
|---|---|---|
| John BLythe | DiRECTOR | |
| STEVEN FuRTAdo | STORE AdMINISTRATOR | |
| MARY GibSON | GRocERY MANAGER | |
| BiLL McCOLLUM | CAO SPECIALIST | |

**8. DATE OF MOST RECENT ALLEGED DISCRIMINATORY INCIDENT FOR WHICH YOU SOUGHT COUNSELING** *(MM-DD-YYYY)*: 01 December 05

**9. EXPLAIN HOW YOU BELIEVE YOU WERE DISCRIMINATED AGAINST** *(treated differently from other employees or applicants). (For each allegation identified in 10, below, please state to the best of your knowledge, information and belief what incident occurred and when the incident occurred. If you need more space, continue on another sheet of paper.)*

**10. CHECK BELOW WHY YOU BELIEVE YOU WERE DISCRIMINATED AGAINST** *(Check all that apply)*

- [X] a. RACE *(if so, state your race)*
- [ ] b. COLOR *(if so, state your color)*
- [ ] c. RELIGION *(if so, state your religion)*
- [ ] d. NATIONAL ORIGIN *(if so, state your national origin)*
- [ ] e. SEX *(if so, state your sex)*
- [ ] f. AGE *(if so, state your age)*
- [ ] g. HANDICAP *(if so, state whether mental or physical)*
- [ ] h. SEXUAL HARASSMENT *(if so, state your sex and the sex of the person you believe harassed you)*
- [ ] i. REPRISAL *(if so, state nature of involvement in prior EEO activity)*

GOVERNMENT EXHIBIT 1L

**11. I HAVE DISCUSSED MY COMPLAINT WITH AN EQUAL EMPLOYMENT OPPORTUNITY COUNSELOR.** [X] YES [ ] NO

**12. COUNSELOR** Thomas LABelle

**13. DATE NOTICE OF FINAL INTERVIEW RECEIVED** 24 MARCh 06

**14. STATE ACTION YOU ARE SEEKING TO RESOLVE YOUR COMPLAINT**
RECEIVING My Job back. ALL My Wages that WAS TAKEN

**15. NAME AND ADDRESS OF YOUR REPRESENTATIVE** *(if any)*

**16. REPRESENTATIVE'S PHONE NO.**

**17. COMPLAINANT'S SIGNATURE**

**18. DATE OF THIS COMPLAINT** *(MM-DD-YYYY)*

DeCA Form 56-1, May 1998

This form was electronically designed by DeCA/SAAF using InForms Designer.

2

The FOUR PeoPLE that Lied ON me Punished in some way, I don't WANT this to happen again

Answer to Question 9

I would like to write a few ways I feel I was treated different than a white person. I'm naming a few charges they said against me. disruptive behavior, disrespectful conduct. Failure to follow instruction, nothing compares to what they did

1. Mike Lizeria was allowed to touch Stephanie Lopez in her behind and management told him to watch a movie. Mike was also allowed to punch a person to the floor and get arrested from the commissary and he is still working at the commissary. Mike also receive extra money while on the clo[ck] which was fraud.

2. William McCullen is allowed to come in late everyday, 1 hour, 45 minutes or when ever he felt like it and nothing happened. I received a letter for they said "10 minutes late". William is also allowed to gamble and collect money bet[s] betting on games.

3

William was also allowed in March 31, 2005 to come in to work and tell John Blythe and Steve Furtado off, he was yelling and swearing. All of the girls in the office could hear. Stephanie Lopez, Iva Felton, and Ava Cromwell.

William was also allowed to receive money for putting up signs while he was on the clock for DECA. (Fran

William was allowed to say whatever he wanted to me. When I would tell my supervisor Steve Furtado nothing would happen. I would walk pass him William and he would say comments

William got angry because Iva Felton told the people in the lunch room to turn the TV off. William got angry and called Iva a BITCH. Johnny Spencer and William got into an argument

4

because Johnny felt it was wrong for William to talk to a lady like that. Nothing happen to William.

3. Diane Walsh was allowed to call Stephanie Lopez a NIGGER. Nothing happens

Diane Walsh is allowed to shop in the Commissary without an I D and gets Caught and nothing happens. She's done it for years. Diane Walsh has been reported for years of being mean to customers and employees, she might get a little hit on the hand (of that).

4. Mary Gibson comes into work under the influence of something. You can smell it. Every one knows and nothing happens. Mary Gibson the Grocery manager is allowed to yell at you and swear. I've gone to my supervisor several times and

nothing happened (Steve Furtado)
Mary Gibson decided to take a tomato and eat it in front of Charles Cloud. When Cloud asked Steve Furtado why wasn't something done about it nothing was said. She can steal.
Mary Gibson uses the employees to baby sit her kids. She is allowed to set there schedules acording to how she needs a sitter and managment allows that.
5. I'm supose to do the Computer part of the job. Steve would not give me any help. He would make sure William had about 7 or 8 people. I had to work in the freezer because William did not like being cold. I needed people to stock frozen food. Steve would say I don't have anyone to help you.

6. Brenda Venable is the Director's Secretary. She was allowed to Commit fraud. She was turned into Fraud Waste and abuse for receiving Check from several vendor ~~while~~ while being paid by DECA.

Brenda Was also caught taking Merchandise to her Car twice. None of it paid for. Base Police Was Called in. Stephanie Lopez Wrote Up a statement. Nothing happened. In fact She receive a big bonus from management. (Brenda)

Brenda is allow to yell at you and swear.

I asked Steve Furtado to Write her Up for how she was swearing at me, but of course Steve turned it around to make me the bad person. She's done the same thing

to Stephanie Lopez. Stephanie's mother Came in to see Stephanie And Brenda Was very rude to her. (nothing happened)

On June 5. 2005 Brenda Came in And yelled At Steve Furtado for letting The Cashiers stock her baby food.

Brenda Venable, Mary Gibson William McCullen And Mike Teixeira All received big bonuses.

Luzfea Sellers
29 March 06

I have enclose sheets I would like to be read.

SIGN

# DEFENSE COMMISSARY AGENCY

NORTHERN AREA
NAVAL EDUCATION AND TRAINING CENTER COMMISSARY
NEWPORT, RI 02841-1639

REPLY TO
ATTENTION OF:

24 October 1997

DeCA/EAN/NEP

MEMORANDUM FOR CIVILIAN COMMISSARY EMPLOYEES

Subject: Civilian Employee Acceptance of Position of Trust and Confidence

The primary mission of commissaries is to provide patrons with the best products available at a minimum cost. Patrons and the Government pay unnecessarily for inventory losses and cash losses or discrepancies encountered through theft and negligence.

Civilian commissary employees must recognize and accept their positions as one which demands trust and confidence on the part of each person.

The problem of theft, potential and actual, is one of considerable concern. While we are proud of our overall record, it is considered necessary to emphasize that any employee found to have engaged in theft and/or unauthorized possession of government property or related offenses is liable for dismissal, even though it is a first offense.

Your signature on this memorandum is requested as acknowledgment that you have read and understand the potential consequences if found to have engaged in theft and/or unauthorized possession of government property or related offenses.

John T. Blythe, Commissary Officer

I certify I have read and understand this memorandum pertaining to civilian employee acceptance of position of trust and confidence and the possible consequences of any substantiated violations in this regard.

| Risezda Sellers | [signature] | 6 Nov 97 |
|---|---|---|
| Print name | Signature | Date |

DISTRIBUTION:
Employee Record File 50-2

Why didn't this apply to Brenda Venable.

DEFENSE COMMISSARY AGENCY
HEADQUARTERS
1300 E AVENUE
FORT LEE, VIRGINIA 23801-1800

REPLY TO
ATTENTION OF:

EE

OCT 24 2005

MEMORANDUM FOR HEADQUARTERS DIRECTORS/STAFF OFFICE CHIEFS
REGION DIRECTORS

SUBJECT: Prevention of Sexual Harassment

As the Chief Executive Officer, I am taking this opportunity to reaffirm the Defense Commissary Agency's commitment to maintaining a community in which everyone can work and learn together in an atmosphere free from all forms of harassment, including sexual harassment. This Agency does not tolerate sexual harassment of any kind, and such behavior is prohibited by both law and Agency policy. I hold each employee, supervisory and nonsupervisory, personally responsible for contributing to a work environment that is free from sexual harassment.

Sexual harassment is a form of sex discrimination that is illegal under federal law. It can be verbal, visual, or physical. Although what constitutes sexual harassment and a hostile work environment will vary with the particular circumstance, it is normally defined as unwelcome conduct of a sexual nature that is severe and pervasive; interferes with an individual's work performance; or creates an intimidating, hostile or offensive working environment.

Over the past several months, the Agency has seen a rise in the number of sexual harassment issues alleged by employees. It should be clearly understood that all employees have a responsibility to take an active part in preventing and reporting instances of sexual harassment, and each of us must conduct ourselves in an appropriate and professional manner while in the workplace. If allegations of sexual harassment are reported, managers and supervisors will take these issues seriously, and will seek appropriate measures to address the allegation. The Agency supports zero tolerance for sexual harassment in the workplace.

If you have any questions or need assistance in this area, please contact Ms. Karen Swindell, Affirmative Employment Program Manager, EEO Office, at DSN 687-8620, (804) 734-8620 or e-mail karen.swindell@deca.mil. Please ensure that a copy of this memorandum is provided to all employees. A copy of training materials regarding the prevention of sexual harassment is located in the public folders under Office of Equal Employment Opportunity.

Patrick B. Nixon
Chief Executive Officer

Stephanie Lopez was very upset what Mike Texeria was allowed to do to her. Why was it ok,

10

DEFENSE COMMISSARY AGENCY
NORTHERN AREA
NAVAL EDUCATION AND TRAINING CENTER COMMISSARY
NEWPORT, RI 02841-1638

REPLY TO
ATTENTION OF:

DeCA/EAN/NEP

MEMORANDUM FOR CIVILIAN COMMISSARY EMPLOYEES

Subject: Semi-Annual Training - Standard of Conduct

An attitude must be developed among all personnel which DeCA does the right thing, every time, all the time. Good ethics simply requires people use good judgement, maintain personal integrity, be honest and fair. One of the best measures for determining the ethics of any situation is to ask oneself, "How would this look in the newspaper?". All DeCA employees must maintain an environment which includes appropriate ethical responses to situations which may arise during the performance of his/her official duties.

General Requirements of the Standards of Conduct (DeCAD 80-2) are:

1. Avoid conflict of interest and/or the appearance of conflict of interest.
2. Become knowledgeable of DeCA standards.
3. Consult DeCA's ethics official for guidance with "gray" areas.
4. Don't expend or recommend expenditure of government funds believed to be in violation of federal laws.
5. DeCA standards and private business practices/standards may be different; DeCA personnel are accountable for their actions.
6. Promote equal opportunity within DeCA.
7. DeCA personnel shall not:
   --Use public office for private gain
   --Give preferential treatment
   --Impede government efficiency
   --Lose complete independence or impartiality
   --Affect adversely the confidence of the public in government integrity
   --Make a government decision outside of official channels

Conflicts of Interest are:

--Engaging in any personal business or professional activity which conflicts with the interest of the US Government.
--Any action which might convey the impression that one product, company, or representative is unjustly favored over another.

Brenda, Lorraine, William McCullen and Mike Texeria are "guilty of several of these (over)

--DeCA employees who knowingly deal on behalf of the government, any transaction which would be in violation of a statute, regulation, or policy set forth in the DeCAD.
--Use of DeCA position, property, resources and/or information to induce, coerce, or in any manner influence any person to provide any benefit, financial or otherwise, to themselves or others.
--Use of official title in connection with the promotion or endorsement of any commercial enterprise/product.

DeCA personnel must protect and conserve government property and resources.

DeCA personnel are prohibited from making personal commercial solicitations or sales to other DeCA personnel, including sake of stocks, insurance, real estate, etc.

Other prohibitions:
--Gambling
--DeCA employees shall not participate
--Gratuities, reimbursements, and other benefits from outside sources

John T. Blythe
Commissary Officer

I certify I have read and understand this memorandum pertinent to DeCA Ethics and DeCA Standards of Conduct and the possible consequences of any substantiated violations in this regard.

Rosezola Sellers | Rosezola Sellers | 17 April 98
Print Name | Signature | Date

I would like to know why nothing happened to them? they can lie on me and I lose my job. Something is wrong. R. Sellers

Dennis, Please have all employees read, sign and return. C.J.

DEFENSE COMMISSARY AGENCY
NORTHEAST REGION
FORT GEORGE G. MEADE, MARYLAND 20755-5220

REPLY TO ATTENTION OF:

RDP

MEMORANDUM FOR ALL EMPLOYEES

SUBJECT: Defense Commissary Agency Northeast Region's Policy Statement on Violence in the Workplace

In order to provide all DeCA, Northeast Region employees with a healthy, safe and secure work environment, a no tolerance policy on Violence in the Workplace has been established. Our work environment must be free from all forms of violence, and acts of intimidation, including harrasement, threats, altercations or assaults. It is our policy that acts of violence in the workplace are unacceptable and will not be tolerated. You are advised this policy applies equally to employees, both supervisory and non-supervisory.

DeCA employees are required to conduct themselves in a professional manner, and to be courteous and respectful to supervisors, co-workers and customers at all times. Employees who exhibit violent behavior, such as, intimidating, harrassing, threatening, or assaulting others will be subject to disciplinary action, up to and including removal from the Federal service. In addition, if warranted, misconduct will be referred to local police and legal authorities for possible action.

All members of the work force have an obligation to keep our workplace safe from threats and violence. Employees must assume some responsibility for their own safety by being observant of undesirable or unusual changes in coworkers' behavior and reporting such behavior to management. When you ignore unacceptable behavior, you reinforce that behavior for the next time. Early intervention is the key to successfully defusing many potentially violent situations. You are reminded that your personnel satellite office can advise you and should be consulted for appropriate administrative action.

As the Director, Northeast Region, I am firmly committed to a work environment that is safe, supportive and free from Workplace Violence. Your compliance to this policy is essential to all of us

Why didn't this apply to make Teteria. He punched a person to the floor?

13

DEFENSE COMMISSARY AGENCY
DeCA EAST, Newport Naval Station Commissary
Bldg 1163, Whipple Street 1
Newport, RI 02841-1639

REPLY TO
ATTENTION OF

DeCA-EA-NBJ October 17, 2005

MEMORANDUM FOR MS. ROSEZOLA SELLERS, COMMISSARY MANAGEMENT SPECIALIST, GS-1144-05, NEWPORT NS COMMISSARY

SUBJECT: Notice of Proposed Removal

This memorandum serves as official notification that I propose to remove you from Federal service for failure to follow instructions, disruptive behavior, and disrespectful conduct.

Charge 1: Failure to Follow Instructions

Specification 1: In that you, having knowledge of my instruction to you to complete a release for period 16 no later than the end of the day, an instruction which it was your duty to obey, did, at the Newport NS Commissary, on or about June 30, 2005, fail to obey the same.

Specification 2: In that you, having knowledge of my instruction to you to write a witness statement for an official investigation, an instruction which it was your duty to obey, did, at the Newport NS Commissary, on or about September 2, 2005, fail to obey the same.

Specification 3: In that you, having knowledge of my instruction to you to bring in medical documentation to support an absence for one week, an instruction which it was your duty to obey, did, at the Newport NS Commissary, on or about September 25, 2005, fail to obey the same.

Specification 4: In that you, having knowledge of my instruction to you to stock new items in the U-Boat Display, an instruction which it was your duty to obey, did, at the Newport NS Commissary, on or about October 11, 2005, fail to obey the same.

Charge 2: Disruptive Behavior

Specification: On or about August 29, 2005, you were in the Dairy Receiving area of the Newport NS Commissary, you blocked the passage of a co-worker and then interfered with that employee's movement when you pushed your pallet in the path of the co-worker causing the cart to strike the employee, thus disrupting the work unit.

Charge 3: Disrespectful Conduct

Specification 1: On or about June 1, 2005, at the Newport NS Commissary, you talked to and acted toward your supervisor in a disrespectful manner by contemptuously folding your arms and staring at her without responding to her question, and then loudly and contemptuously saying "why don't you just follow me with a camera and take pictures" or words to that effect, when questioned why you did not perform a task that it is your duty to know how to perform.

N

Specification 2: On or about October 11, 2005, at the Newport NS Commissary, you talked to your supervisor in a disrespectful manner when you stated to her in a contemptuous manner, "Oh, right, Mary is just little Ms. Innocent, you're so innocent" or words to that effect.

Specification 3: On or about October 11, 2005, at the Newport NS Commissary, you talked to me, your second level supervisor, in a loud, disrespectful and contemptuous manner, when you said to me "What do I look like, a two year old child?" and "go ahead write it up, I would like it written up, also." or words to that effect.

Specification 4: On or about September 8, 2005 and on or about October 13, 2005, you acted in a disrespectful manner to a co-worker by coughing on him and saying to him "You're gay." and "You're so gay.", or words to that effect.

Background:

a. On or about June 30, 2005, you were paged into your supervisor's office and questioned why you did not perform the task of releasing period 16. You stated you did not know you were supposed to, when in fact, you did know that. You stated you were getting ready to go home. You were told that you still had some time left on your shift and this task needed to be performed prior to your departure. You left the office and did not perform the task as your supervisor did your job later that evening.

b. On or about September 2, 2005, you were directed to prepare a statement about an incident that happened in the Grocery Department's Office while you were present. You did not prepare the statement so the supervisor came to you again and asked you to prepare a statement. You said you would not write a statement, that you had nothing to say. The supervisor then stated that they were directing you to write it as you were part of the investigation. You stated, "I am not writing anything. I don't have anything to say. If you want to write an action then just make sure that you give me a copy." You eventually did prepare a statement which read: "Mary Gibson asked me to write a statement about what happened on 26 August 2005. My statement is, I have nothing to say."

c. On or about September 25, 2005, you requested sick leave for one week. I asked you to provide administratively acceptable medical documentation since you were requesting one week off and did not divulge the reason. You brought in a doctor's note that stated, "Rose Sellers was placed out of work for 1 week (starting 9/22/05). Due to HIPPA Regulations, we cannot discuss any further medical information without Ms. Sellers' written permission." Per Section 630.403, Code of Federal Regulations, this is not administratively acceptable medical documentation. Once you realized that the leave would not be approved unless the required documentation was provided, you then provided the necessary paperwork and turned it in to your supervisor.

d. On or about October 11, 2005, your supervisor gave you an order to stock the New Items in the U-Boat display and told you it was a priority. You stated you needed to count other items and flag them and did not perform the task your supervisor ordered you to do. Later that morning, your supervisor checked on your progress to ensure you did complete the task and that you had sufficient help. You did finally begin the task as you were directed to do earlier and then engaged in a confrontation with your supervisor about co-workers assisting you.

15

e. On or about August 29, 2005, you were in the Dairy Receiving area of the commissary store and blocked the pathway of another employee who was pushing a cart. You placed your pallet so that they could not leave the area and had to wait for you as you walked away towards the freezer, all the while you were grinning. When the employee attempted to move your pallet to the side so they could continue moving their cart, you came back and proceeded to pull your pallet, hitting the pallet into the other employee's cart so that it bumped into the employee's stomach. Again you were grinning while doing this, but never uttered a word.

f. On or about June 1, 2005, your supervisor called you in to her office to question you about cycle counts as they needed adjustments. When she asked you about the adjustments, you crossed your arms and stared at her in a contemptuous manner. She repeated the question and, again, you just stared at her. You finally responded in a loud tone with, "Mary, I don't remember. There are so many items in this store misplaced that that could have been the problem. I might have scanned it and then it was in the wrong spot a few places down the aisle, and yes, it is my duty to do that aisle and if you don't want me to do it, then rewrite the letter," or words to that effect. You continued and asked her, "why don't you just follow me with a camera and take pictures," or words to that effect.

g. On or about October 11, 2005, you had a confrontation with your immediate supervisor. As your supervisor walked away to end the conversation, you said, "oh right, Mary is just little Miss Innocent, you're so innocent" or words to that effect. After the incidents in the morning, I called you and your supervisor to my office (Store Administrator) to discuss the matter. You accused me of rolling my eyes at you, talking to you as if you were a two-year old child and continued in that vein, pointing to your chest and talking in a loud voice. I tried to explain the situation and, seeing the situation getting out of control, stated that the conversation was over as it was not resolving the issue. You then stated, "that's right, write it up. I would like it written up also," and walked away.

h. On or about September 8, 2005, you continued to harass a co-worker by coughing when you walk by him and giving him and his parents, Commissary patrons, "dirty looks and smirks" when they shopped in the commissary store. On or about October 13, 2005, you entered the break room where this same co-worker was using the microwave and walked up behind him and coughed on him in an obvious attempt to get his attention. When he turned around you said, "you're gay." You then proceeded to the door of the break room, turned around and said, "you're so gay" and left the break room. This is the same employee you harassed and you received discipline for in April 2005.

I have thoroughly reviewed all the facts in your case and I consider the proposed action to be the absolute minimum penalty necessary to promote the efficiency of the Federal service. Your pattern of disruptive and disrespectful conduct towards co-workers and supervisors alike, seriously and adversely impacts the efficient operation of the Newport NS Commissary Store. Your conduct is intolerable as it causes a delay in the performance of the mission of this store and disruption and dissension among the work force. I have considered your past disciplinary record which consists of a Letter of Reprimand on February 25, 2004, for failure to follow instructions and disrespectful conduct, and a 14-day Suspension in April 2005 for disruptive behavior, disrespectful conduct and failure to follow supervisor's instructions. I have also considered your past work record, potential for rehabilitation and the need to maintain discipline and morale within this commissary store.

16

You have the right to representation. If you intend to be represented, you must designate that person in writing. Once the designation has been made, all contacts and correspondence will be through the representative.

You and your representative (if any) have the right to reply, personally or in writing, and to submit any and all reasons you may desire to include affidavits in support thereof. Your reply, whether oral, written or both, must be received by the Store Director, Mr. John Blythe, not later than 21 calendar days following your receipt of this memorandum. You are to submit your reply to the Store Director, Ms. John Blythe, by calling 401-841-2211, or by writing to Mr. Blythe at the Newport NS Commissary, Building 1163 Whipple Street, Newport NS, RI 02841-1639. If you require additional time to respond, you may ask for it. Your request must be in writing, giving valid reasons why, and consideration will be given to granting you an extension.

Full and careful consideration will be given to any reply you make before a final decision is made on the proposed action. The Deciding Official will issue a written decision that states the specific reasons for the decision at the earliest practical time following consideration of your reply.

If you do not understand the reason for this proposal, you may contact me for further explanation. If found warranted, the proposed action will not be effective before the expiration of the 30-day notice period following your receipt of this letter, and until you receive a letter of final decision. You have the right to review the material used to support this action. If you want to review the material and applicable regulations, contact Ms. Donna Clark, Human Resources Specialist, Headquarters, 1300 E Avenue, Fort Lee, VA 23801, or by calling (804) 734-8550.

You will remain in a duty status in your present assignment grade and salary during the advance notice period established by this memorandum.

Steven Furtado
Assistant Commissary Officer
Newport NS Commissary

Acknowledgement of Receipt: Ms. Sellers refused to sign proposal letter

Signature: John Bl Date: 10/17/05

17

DEFENSE COMMISSARY AGENCY
DeCA EAST, Newport Naval Station Commissary
Bldg 1163, Whipple Street
Newport, RI 02841-1639

REPLY TO ATTENTION OF

DeCA-EA-NBJ

November 29, 2005

MEMORANDUM FOR MS. ROSEZOLA SELLERS, COMMISSARY MANAGEMENT SPECIALIST, GS-1144-05, NEWPORT NS COMMISSARY

SUBJECT: Decision to Notice – Removal

Reference is made to the Notice of Proposed Removal, dated October 17, 2005, proposing your removal from the Federal service. The Notice of Proposed Removal was given to you on October 17, 2005.

You were afforded 21 calendar days in which to reply orally, in writing, or both, to the Notice of Proposed Removal. Your written response was received November 18, 2005.

I have carefully, fully and impartially considered your written response, and all evidence, documentation, and the reasons and specifications contained in the Notice of Proposed Removal. Your written response does not provide sufficient evidence to overcome the preponderant evidence of record that you failed to follow instructions, displayed disruptive behavior and conducted yourself in a disrespectful manner, as was charged in the Notice of Proposed Removal.

Your failure to follow instructions has a direct negative impact on your ability to accomplish your assigned duties which places an undue burden on the commissary. Additionally, I cannot condone your disruptive and disrespectful behavior. I feel this action is the minimum necessary to promote the efficiency of the service. Therefore, it is my decision to remove you from Federal service effective December 10, 2005.

A Standard Form 50, Notification of Personnel Action, effecting your removal will be forwarded to you.

You have the right to appeal this action to the Merit Systems Protection Board (MSPB) within 30 calendar days of the effective date of this action or file a grievance using the negotiated grievance procedures pursuant to the Master Labor Agreement between the Defense Commissary Agency (DeCA) and the American Federation of Government Employees (AFGE), but not both. If you choose to file an MSPB appeal it must be in writing and contain all the information specified in the Board's regulations (Attachment 1). Such appeal must be filed with the Region Director, Washington, DC Regional Office, 1800 Diagonal Road, Suite 205, Alexandria, VA 22314-2840, facsimile number: 212-264-1417. An appeal may be filed by mail, facsimile, commercial overnight delivery or personal delivery. Additionally, should you wish to file an electronic appeal, you will find assistance at the MSPB website: www.mspb.gov.

For further information regarding regulations and procedures used in this matter, you may contact Ms. Donna Clark, Human Resources Specialist, 804-734-8550, at DeCA HQ, 1300 E Avenue, Fort lee, VA 23801.

John Blythe
Store Director
Newport NS Commissary

Attachment:
As stated

Acknowledgement of Receipt:

Signature:______________________ Date:____________

Refused to sign 12-1-05