UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

ROSEZOLA SELLERS, Plaintiff,

v. CA 05-381 S

UNITED STATES DEPARTMENT OF DEFENSE AND SECRETARY OF OF THE DEPARTMENT OF DEFENSE, ROBERT M. GATES,[1] Defendants.

**MEMORANDUM AND ORDER**
**DENYING PLAINTIFF'S**
**MOTIONS TO AMEND AND TO COMPEL**

Before the Court are three motions filed by Plaintiff Rosezola Sellers ("Plaintiff"):

1. Plaintiff's Second Amended Motion to Amend Complaint (Document ("Doc.") #22) ("Motion to Amend");

2. Plaintiff's Motion to Compel More Responsive Answers to Interrogatories (Doc. #20) ("Motion to Compel Further Answers"); and

3. Plaintiff's Motion to Compel More Responsive Answers to Document Requests (Doc. #21) ("Motion to Compel Further Documents").

The Court refers to the second and third motions collectively as the "Motions to Compel." A hearing was held on

[1] Pursuant to Fed. R. Civ. P. 25(d)(1), Robert M. Gates is substituted for Donald Rumsfeld as a Defendant in this action. See Fed. R. Civ. P. 25(d)(1) ("When a public officer is a party to an action in his official capacity and during its pendency dies, resigns, or otherwise ceases to hold office, the action does not abate and the officer's successor is automatically substituted as a party. Proceedings following the substitution shall be in the name of the substituted party ....").

November 2, 2007.

**Facts**

This is an employment discrimination case. Plaintiff, a black female, alleges that she was subjected to harassment and discrimination based on her race while employed at the Navy commissary in Newport, Rhode Island. See First Amended Complaint (Doc. #2) ¶¶ 8-9, 11. She filed her Complaint in this Court on September 2, 2005. See Docket. Approximately four months later, on or about December 1, 2005, Plaintiff was notified that she was being terminated from her employment. See Defendants' Response in Opposition to Plaintiff's Second Amended Motion to Amend Complaint (Doc. #23) ("Defendants' Response Re Motion to Amend"), Exhibit ("Ex.") 1 (Declaration of Raymond P. Andrade) ("Andrade Decl."), Ex. 1J (Notice of Removal Memorandum) at 1.

After Defendants were served with the Complaint (Doc. #1) on or about January 8, 2006, their counsel[2] advised Plaintiff's counsel that Plaintiff's claims pursuant to 42 U.S.C. § 1981 (Counts IV, V, and VI of the Complaint) could not be brought against Defendants. See Tape of 11/2/07 Hearing; see also Affiliated Prof'l Home Health Care Agency v. Shalala, 164 F.3d 282, 286 (5th Cir. 1999)("suits against the United States brought under the civil rights statutes are barred by sovereign immunity"). Counsel apparently agreed that Plaintiff would file an amended complaint, eliminating the § 1981 claims, and that Defendant would answer the amended complaint. See Tape of 11/2/07 Hearing.

On January 25, 2006, Plaintiff filed her First Amended

---

[2] Defendants have been represented in this action by three Assistant United States Attorneys ("AUSAs"): Robin E. Feder ("AUSA Feder"), Michael P. Iannotti ("AUSA Iannotti"), and Ly T. Nguyen ("AUSA Nguyen"). The Court refers to them in some instances, respectively, as Defendants' first counsel, second counsel, and third counsel.

Complaint (Doc. #2) ("Amended Complaint"). See Docket. A Stipulation (Doc. #3) was filed the next day, giving Defendants sixty days from the date they were served with the Amended Complaint to file their answer. See Docket. Defendants filed their Answer (Doc. #4) on March 24, 2006. See id.

A Rule 16 Conference was held on April 27, 2006. See id. At the conference, counsel advised District Judge William E. Smith that there had been some discussion regarding the possibility of a settlement which involved restoration of Plaintiff's employment. See Tape of 11/2/07 Hearing.[3] Following the conference, Judge Smith issued a pretrial order staying factual discovery, except for disclosures pursuant to Fed. R. Civ. P. 26, until June 12, 2006. See Pretrial Order (Doc. #5) at 1. The order further stated that discovery would close by October 12, 2006. See id.

A settlement conference before Senior Magistrate Judge Robert W. Lovegreen was scheduled for June of 2006, but the daughter of Defendants' first counsel underwent emergency surgery in that month, and the conference was rescheduled for September. See Joint Motion to Amend the Pre-Trial Order (Doc. #6) ("Joint Motion") at 1. On September 19, 2006, Judge Lovegreen conducted the settlement conference, but no settlement was reached. See id. On the same date, the parties filed a joint motion to amend the Pretrial Order by extending the date for completion of discovery to March 1, 2007, and adjusting the other deadlines accordingly. See id. at 2. In support of their motion, counsel stated that they had spent their time working toward a resolution of the case, rather than on discovery, and that they expected to complete discovery by the requested date of March 1, 2007. See id. at 1-2. The Joint Motion was granted two days later by Judge

---

[3] Plaintiff's counsel made this representation, and the Court accepts it for purposes of this Memorandum and Order.

Smith, and the Pretrial Order deadlines were reset as counsel had requested. See Docket.

Defendants propounded interrogatories and a request for production of documents to Plaintiff on September 18, 2006. See Motion for Order Compelling Answers to Interrogatories and the Production of Documents (Doc. #8) ("Defendants' Motion to Compel") at 1. Defendants' first counsel agreed to extend the time for Plaintiff to respond to these discovery requests to November 18, 2006. See id., Ex. C (Certification). When Plaintiff had not served her responses by November 30, 2006, Defendants' second counsel attempted to contact Plaintiff's counsel telephonically regarding the overdue responses. See id. After receiving no response, Defendants' second counsel filed Defendants' Motion to Compel on December 5, 2006, and this motion was granted on December 27, 2006. See Docket. According to Plaintiff, she served her responses to Defendants' discovery requests on or about February 13, 2007.[4] See Tape of 11/2/07 Hearing.

On January 22, 2007, Plaintiff filed an assented to motion to extend the discovery period, requesting that the date for close of discovery be extended from March 1, 2007, to April 2, 2007, and that the other deadlines be adjusted accordingly. See Assented to Motion to Extend Discovery Period (Doc. #9) ("Assented to Motion"). The Assented to Motion was granted, and the dates were advanced as requested. See Docket. Plaintiff propounded her first set of interrogatories and first request for production of documents to Defendants on February 20, 2007. See Defendants' Response in Opposition to Plaintiff's Motions to

---

[4] Defendants state that they received Plaintiff's responses to their discovery requests on February 21, 2007. See Motion for Extension of Time to Complete Discovery (Doc. #10) ("Motion for Extension").

Compel More Responsive Answers to Interrogatories and Document Requests (Doc. #26) ("Defendants' Response Re Motion to Compel"), Ex. 1 (Plaintiff's First Set of Interrogatories to Defendants) at 11; id., Ex. 2 (Plaintiff's First Request for Production of Documents) at 14.

Defendants moved on March 14, 2007, for a further extension of the time to complete discovery. See Motion for Extension of Time to Complete Discovery (Doc. #10) ("Motion for Extension"). The Motion for Extension noted, *inter alia*, that there had been a change in Defendants' counsel in mid-November 2006, that Defendants' Motion to Compel had been granted in December, and that Plaintiff had complied with the resulting Court order on February 21, 2007. See Motion for Extension at 1. Defendants asked that the discovery deadline be extended to August 15, 2007. See id. at 3. Judge Smith granted this request in a text order issued on March 20, 2007, which also adjusted the other deadlines accordingly. See Docket. Of particular importance to the determination of the instant Motions, the text order also stated that "NO FURTHER EXTENSIONS WILL BE GRANTED." Id.

Defendant hand-delivered its responses to Plaintiff's interrogatories and request for production of documents on April 11, 2007. See Defendants' Response Re Motion to Amend, Ex. 2 (Defendant's [sic] Responses to Plaintiff's First Set of Interrogatories) at 32; Defendants' Response Re Motion to Compel, Ex. 4 (Defendant's [sic] Responses to Plaintiff's First Request for Production) at 64. Defendants' responses contained general objections to both the interrogatories and the document requests as well as specific objections to each of the nineteen interrogatories and most of the fifty-three separate document requests. See Defendants' Response Re Motion to Amend, Ex. 2; Defendants' Response Re Motion to Compel, Ex. 4. Without waiving these objections, Defendants provided a written response to each

interrogatory and each request for production and, in almost all instances, imparted information which they deemed responsive to that interrogatory or document request. See id.

Several of the interrogatories included requests for information regarding or relating to Plaintiff's termination. See Defendants' Response Re Motion to Amend, Ex. 2 at 5, 9, 12, 24, 26 (Interrogatories Nos. 1, 3-4, 13, 15). Defendants' responses to these interrogatories, which were signed by AUSA Michael P. Iannotti ("AUSA Iannotti"), included the following objection:

> [This Interrogatory] seeks information about an issue that is not part of the subject case; namely, the plaintiff's termination. The plaintiff's termination from federal service is currently the subject of an administrative investigation. If the Plaintiff wishes to propound discovery on her removal, she must amend her complaint in the subject district court case to include removal, which will then allow the agency to dismiss her administrative complaint.

Defendants' Response Re Motion to Amend at 3 (quoting Ex. 2 at 6, 10, 13-14, 24, 26).

During a conversation on June 1, 2007, Plaintiff's counsel told Defendants' third counsel, AUSA Ly Nguyen ("AUSA Nguyen"), that Defendants' response to Plaintiff's discovery requests was deficient, but did not explain which responses were deficient or why she believed they were deficient. See Defendants' Response Re Motion to Compel, Ex. 5 (e-mail from Nguyen to Andrews of 6/7/07). AUSA Nguyen attempted to determine the basis for Plaintiff's counsel statement by sending an e-mail to her on June 7, 2007, which stated in part:

> With regard to any interrogatory or subpoena response that you feel is deficient, I have not heard back from you regarding what specific interrogatory or specific subpoena response you feel is deficient since our conversation on June 1, 2007, and why you feel it is

> deficient. I note that the discovery responses were hand-delivered to you on April 11, 2007. As was stated in the interrogatory response and subpoena, the requests were among other things, overly broad and requested information that is not the subject of the amended complaint. If you can specifically identify what response you believe is inadequate and why you believe it is inadequate, we can work to resolve this matter.

Defendants' Response Re Motion to Compel, Ex. 5.

The issue of whether Plaintiff's termination was part of the instant case surfaced again during the deposition of Mary Gibson, a witness, on July 25, 2007. AUSA Nguyen objected to a line of questioning relating to Plaintiff's termination "because termination is not an issue in this case ...." Defendants' Response to Motion to Amend, Ex. 3 (Transcript) at 2.[5] Plaintiff's counsel responded by stating her belief that Plaintiff's termination was part of the case because it constituted retaliation and that Plaintiff did not have to amend the Amended Complaint. See id. at 3. AUSA Nguyen then asked whether Plaintiff's termination was referenced in the Amended Complaint, and Plaintiff's counsel repeated that the termination was another form of retaliation. See id. The following exchange then occurred between counsel.

> AUSA NGUYEN: When have you ever noticed us regarding this termination? I believe in our discovery responses we had alerted you to the fact that this case was not about --
>
> MS. ANDREWS: We had discussions at the pretrial conference with the original attorney about the termination. Okay? We had discussions about it with the Judge. And then

[5] Ex. 3 at 2 is page 34 of the transcript of the July 25, 2007, deposition of Mary Gibson.

after that with Mr. Iannotti I talked all about the termination and I told him about the line of cases that allows us to make this part of it and that's the position that I'm taking.[6]

AUSA DONOVAN:[7] We don't have to resolve it today. Just the objection's on the record and just note it, that's all.

Defendants' Response to Motion to Amend, Ex. 3 at 3.

Discovery closed on August 15, 2007. The following day Plaintiff's co-counsel, who had entered her appearance on July 30, 2007, telephoned AUSA Nguyen to discuss Defendants' responses to Plaintiff's discovery requests. See Defendants' Response Re Motion to Compel at 4; see also Tape of 11/2/07 Hearing. The instant Motions to Compel were filed on August 24, 2007. See Docket.

Plaintiff filed a motion to amend her Amended Complaint on August 20, 2007, but neglected to submit a copy of the proposed second amended complaint. See Plaintiff's Motion to Amend Complaint (Doc. #18). This oversight was corrected the next day when Plaintiff's Amended Motion to Amend Complaint (Doc. #19) was filed. A week later, on August 28, 2007, Plaintiff filed the instant Motion to Amend. See Docket. It differed from the

---

[6] Plaintiff's counsel's implication that she and AUSA Iannotti had an informal understanding that Plaintiff's termination was part of the instant case is at odds the fact that AUSA Iannotti signed Defendants' Responses to Plaintiff's First Set of Interrogatories. Those responses contained the objection, made multiple times therein, that Plaintiff's termination "is not part of the subject case." Defendants' Responses Re Motion to Amend, Ex. 2 at 6, 10, 13-14, 24, 26; see also Facts supra at 6.

[7] In addition to AUSA Nguyen, Defendants were represented at the deposition by AUSA Dulce Donovan.

motion filed a week earlier in that attached as an exhibit to the proposed second amended complaint was a copy of a right to sue letter regarding Plaintiff's complaint of racial discrimination in her removal from federal service in December of 2005. See Motion to Amend, Ex. B (Letter from Page to Plaintiff of 8/20/07). The two prior motions to amend the Amended Complaint were subsequently deemed moot. See Tape of 11/2/07 Hearing; see also Docket. Thus, the Court treats the motion filed on August 28, 2007, as the operative Motion to Amend. See Tape of 11/2/07 Hearing.

**I. Motion to Amend**

**A. Law**

Pursuant to Fed. R. Civ. P. 15(a), a party may amend its pleadings once as a matter of course before a responsive pleading is served. Otherwise, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). However, "the liberal amendment policy prescribed by Rule 15(a) does not mean that leave will be granted in all cases." Acosta-Mestre v. Hilton Int'l of Puerto Rico, Inc., 156 F.3d 49, 51 (1st Cir. 1998)(quoting 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, § 1487 at 611 (2d ed. 1990)); see also Adorno v. Crowley Towing & Transp. Co., 443 F.3d 122, 126 (1st Cir. 2006) ("Consent to file amended pleadings 'shall be freely given when justice so requires,' Fed. R. Civ. P. 15(a), unless the amendment would be futile or reward undue delay."). Where considerable time has elapsed between the filing of the complaint and the motion to amend, "the *movant* has the burden of showing some 'valid reason for his neglect and delay.'" Grant v. News Grp. Boston, Inc., 55 F.3d 1, 6 (1st Cir. 1995)(quoting Stepanischen v. Merchants Despatch Transp. Corp., 722 F.2d 922, 933 (1st Cir.

1983)(quoting Hayes v. New England Millwork Distribs., Inc., 602 F.2d 15, 19-20 (1st Cir. 1979))). "While courts may not deny an amendment solely because of delay and without consideration of the prejudice to the opposing party, ... it is clear that 'undue delay' can be a basis for denial." Tiernan v. Blyth, Eastman, Dillon & Co., 719 F.2d 1, 4 (1st Cir. 1983)(quoting Hayes, 602 F.2d at 19) (alteration in original). "A party's belated attempt to revise its pleadings requires that a court examine the totality of the circumstances and exercise sound discretion in light of the pertinent balance of equitable considerations." Quaker State Oil Refining Corp. v. Garrity Oil Corp., 884 F.2d 1510, 1517 (1st Cir. 1989).

**B. Application**

The Motion to Amend was filed approximately twenty-four months after Plaintiff filed her Complaint, twenty months after she was removed from her employment, and nineteen months after she filed her Amended Complaint. Most significantly, it was filed after discovery had closed. See Berrios-Berrios v.Puerto Rico, 206 F.R.D. 342, 345 (D.P.R. 2002)(denying request to amend complaint and describing as "most important[]" the fact that motion was filed after the discovery deadline set by the court had passed and the date for filing dispositive motions was upon the parties). Plaintiff's explanation for this delay appears to be that she could not add her termination as a claim in this action until she received a right to sue letter. See Tape of 11/2/07 Hearing.

Plaintiff filed an Equal Employment Opportunity ("EEO") complaint regarding her termination on or about March 29, 2006. See Plaintiff's Memorandum of Law in Support of Second Amended Motion to Amend Complaint ("Plaintiff's Mem. Re Motion to Amend"), Ex. B at 1. Pursuant to 29 C.F.R. § 1614.302(d)(1), she could have filed a civil action 120 days after filing her EEO

complaint.[8] Thus, Plaintiff could have attempted to amend her Amended Complaint so as to include her termination claim on July 27, 2006, 120 days after filing her EEO complaint.

It appears that Plaintiff was advised that she could file a civil action if the Defense Commissary Agency ("DeCA"), the agency with whom Plaintiff filed her EEO complaint, did not issue a final decision after 180 days. See Andrade Decl., Ex. 1M (Letter from Andrade to Plaintiff of 5/8/06) at 2 ("Instead of an appeal to the EEOC, you may file a civil action in the proper U.S. District Court ... if DeCA has not issued a final decision on your complaint, after 180 Calendar Days from the date the formal complaint was filed."). While this was sixty days longer

---

[8] 29 C.F.R. § 1614.302(d)(1)(i) provides in relevant part:

> If a final decision is not issued within 120 days of the date of filing of the mixed case complaint, the complainant may appeal the matter to the [Merit System Protection Board] at any time thereafter as specified at 5 CFR 1201.154(b)(2) or may file a civil action as specified at § 1614.310(g), but not both ....

29 C.F.R. § 1614.302(d)(1)(i). "A mixed case complaint is a complaint of employment discrimination filed with a federal agency based on race, color, religion, sex, national origin, age or handicap relating to or stemming from an action that can be appealed to the Merit System Protection Board (MSPB)." Id. § 1614.302(a)(1). Plaintiff's termination claim is a mixed case complaint because the termination was appealable to the MSPB, see Andrade Decl., Ex. 1J (Notice of Removal Memorandum) at 1, and she claims that her termination constituted unlawful retaliation in violation of Title VII, Plaintiff's Mem. Re. Motion to Amend, Ex. A (Second Amended Complaint) ¶ 13. See Valentine-Johnson v. Roche, 386 F.3d 800, 802 (6th Cir. 2004)("A mixed case is one where a federal employee alleges that she suffered from an adverse agency action appealable to the ... [MSPB], and that the action was also based on discrimination in violation of Title VII."); see also id. at 805 (outlining the statutory and regulatory framework for the processing of cases which combine an adverse personnel action by a federal agency with claims of discrimination); id. ("If 120 days pass without a final decision from the agency's EEO office, the same avenues of appeal again become available: the complainant can file either a mixed case appeal with the MSPB or a civil action in district court.")(quoting Butler v. West, 164 F.3d 634, 638-39 (D.C. Cir. 1999)).

than the period prescribed for a mixed case in 29 C.F.R. § 1614.302(d)(1)(i), even if the Court were to find that Plaintiff was misled by the May 8, 2006, letter from Mr. Andrade and erroneously believed that she could not have moved to amend her Amended Complaint to add her termination claim until 180 days had passed from the filing of her complaint, 180 days after March 29, 2006, is September 25, 2006. As this is eleven months before Plaintiff filed the Motion to Amend, the Court rejects her explanation that she was unable to file the motion earlier because she had not received a right to sue letter.

Also weighing against excusing Plaintiff's eleventh hour attempt to further amend her pleadings is the fact that Defendants' counsel repeatedly advised Plaintiff's counsel of the necessity of moving to amend if Plaintiff wanted to make her termination part of the instant case. See Defendants' Response Re Motion to Amend, Ex. 2 at 6, 10, 13-14, 24, 26-27; id. Ex. 3 at 2-3. Plaintiff's counsel apparently chose to disregard this advice until after discovery had closed.

In attempt to defend the late filing, Plaintiff asserts that Defendants "have been repeatedly advised by Plaintiff's counsel that, upon the issuance of the Right-to-Sue, Plaintiff intended to amend her complaint." Plaintiff's' Mem. Re Motion to Amend at 3.[9] As support for this assertion, Plaintiff's counsel presented at the hearing copies of e-mails between her and AUSA Iannotti from January, February, and March 2007.[10] See Plaintiff's Hearing

---

[9] The pages of Plaintiff's Memorandum of Law in Support of Second Amended Motion to Amend Complaint ("Plaintiff's Mem. Re Motion to Amend") are not numbered. Plaintiff's attention is directed to DRI LR Cv 5(a)(3) ("Where a document is more than one page in length, the pages shall be numbered at the bottom center of each page.").

[10] The practice of referring to documents which are not part of the record is problematic. In this instance, the Court elected to remedy the problem by designating the documents hearing exhibits. Counsel should not assume that the Court will always be as indulgent.

Ex. 1. In a February 22nd e-mail, Plaintiff's counsel advised AUSA Iannotti that she had been contacted by a government EEO officer regarding the EEO complaint which Plaintiff had filed in connection with her suspension and termination. See Plaintiff's Hearing Ex. 1. at 1. Plaintiff's counsel further advised that she told the EEO officer that she (Plaintiff's counsel) was taking the position that the suspension and firing were part of the instant lawsuit and that they "grew out of the earlier charges." Id. The e-mail to AUSA Iannotti concludes:

> We should talk about this because it raises some issues. If you are taking the position that the suspension and firing are not part of this lawsuit, then we have to get a right to sue and I have to amend my complaint. Alternatively, I will have to file a separate lawsuit but that does not make any sense.
>
> Pleae call me or write me your thoughts on this.

Id.

In a subsequent e-mail on March 2, 2007, Plaintiff's counsel wrote: "I have not heard from you. You were going to get back to me about the right to sue issue so I can amend my complaint." Id. at 2. AUSA Iannotti replied in less than two hours that he "ha[d] not had the opportunity to review the right to sue issue." Id.

The Court is not persuaded that these e-mails support Plaintiff's contention that Defendants have known for months that Plaintiff intended to file a second amended complaint, adding the termination claim, for three reasons. First, any doubt regarding AUSA Iannotti's position on the issue of whether Plaintiff's

---

The Court views with disfavor the fact that Defendants' counsel had not seen the documents until the morning of the hearing. Plaintiff's counsel's explanation that she had only recently located them does not explain why she did not immediately advise Defendants' counsel of her intent to refer to them at the hearing.

termination was part of the instant lawsuit was unequivocally dispelled on April 11, 2007, when Defendants' responses to Plaintiff's interrogatories were hand-delivered to Plaintiff's counsel. As previously noted, those responses, which were signed by AUSA Iannotti, repeatedly stated Defendants' position that the termination was not an issue in this case and that if Plaintiff wanted to include it she should amend the Amended Complaint. Second, notwithstanding this notification, Plaintiff took no action to amend her pleading during the four months which followed. Third, at the July 25th deposition, Plaintiff's counsel asserted (and the transcript suggests with some vehemence) that Plaintiff did not have to amend her pleading and that the termination was part of the retaliation alleged in the Amended Complaint. Thus, to the extent Plaintiff contends that Defendants cannot claim to be prejudiced by the proposed amendment because they have known for months that Plaintiff intended to amend the Amended Complaint, the Court rejects such contention. Given what is reflected in the record, the Court fully expects that Defendants were surprised when Plaintiff moved to amend the Amended Complaint after discovery had closed.

The e-mails also include one dated May 1, 2007, from Plaintiff's counsel to her secretary/paralegal asking her to call the EEO investigator and "tell her that we want a right to sue. Can we get it or does the government have to do that?" Plaintiff's Hearing Ex. 1 at 4. Presumably, Plaintiff's counsel has submitted this e-mail to support her implicit contention that she has always intended, at least since being advised on April 11, 2007, of Defendants' position on the termination issue, to amend her Amended Complaint to add that claim. However, the e-mail's persuasiveness in this regard is virtually nullified by her assertions at the July 25, 2007, deposition that the termination was part of this case and that she did not have to

amend the Amended Complaint.

The e-mail (as well as the February 22nd e-mail) does suggest that Plaintiff's counsel was not aware she could file suit without a right to sue letter 120 days after the filing of the EEO complaint. However, Plaintiff's counsel's apparent lack of awareness of this fact is not a reason to grant the Motion to Amend. See Hayes v. New England Millwork Distribs., Inc., 602 F.2d 15, 20 (1st Cir. 1979)("ignorance or misunderstanding of the law 'has been held an insufficient basis for leave to amend") (quoting Goss v. Revlon, Inc., 548 F.2d 405, 407 (2nd Cir. 1976)); cf. Williams v. Healthreach Network, No. Civ. 99-0030-B, 2000 WL 760742, at *2 (D. Me. Feb. 22, 2000)(holding that defendant has no duty to inform Plaintiff of claims which she might file).

Plaintiff also asserts that Defendants have had notice of Plaintiff's claim concerning the firing because she "referred to the firing as a basis of her claim in the Pre-Trial Conference Statement filed with this Court on or about April 25, 2006." Plaintiff's Mem. Re Motion to Amend at 2. In apparent support of this assertion, Plaintiff notes that "Defendants, in their Initial Disclosures filed with this Court on or about July 31, 2006, identified Plaintiff's 'Notice of Proposed Removal' and 'Decision to Notice-Removal' as relevant documents in their possession." Id. However, Plaintiff did not state in her Pre-Trial Conference Statement that her termination was a claim which she was alleging against Defendants. Rather, the fact that Plaintiff had been fired was presented as background information. See Plaintiff's Pre-Trial Conference Statement at 1. As for the two documents which Defendants cited and to which Plaintiff now points as evidence that Defendants were aware of her termination claim, Defendants validly observe that while they "may have been aware that this was a possible claim that could be added, it was Plaintiff's responsibility to add this claim." Defendants'

Response Re Motion to Amend at 14. The Court agrees. Plaintiff cannot shift responsibility for her own pleading to Defendants. See Acosta-Mestre v. Hilton Int'l of Puerto Rico, Inc., 156 F.3d 49, 52 (1st Cir. 1998)(rejecting such suggestion by plaintiff). Even accepting Plaintiff's explanation that she was warranted in not moving to amend the Amended Complaint pending the settlement conference, nothing prevented Plaintiff from adding this claim to her case thereafter. See Acosta-Mestre, 156 F.3d at 52 (affirming denial of leave to amend complaint where plaintiff sought to add additional defendant and "nothing prevented [plaintiff], the master of his complaint, from then moving to name [third party] as a defendant - other than unwarranted reliance on his adversary").

Plaintiff contends that Defendants will not be prejudiced if she is allowed to file her Second Amended Complaint. The Court disagrees. Cf. Harvey v. Snow, 281 F.Supp.2d 376, 381 (D.R.I. 2003)("Plaintiff's bald assertions that defendants will not be prejudiced does not explain why plaintiffs allowed fifteen months to pass between the time they filed the complaint and the time they filed the motion to amend."). It accepts Defendants' representation that the limited discovery which they have conducted since July 25, 2007, regarding Plaintiff's termination was done for the purpose of mitigating the prejudice which would result if Plaintiff thereafter moved to amend her Amended Complaint and add the termination claim. See Defendants' Mem. Re Motion to Amend at 12. The Court also accepts Defendants' representation that notwithstanding this limited discovery, Defendants would need to conduct additional discovery relating to Plaintiff's termination. Regarding this need, Defendants note that they did not tailor the interrogatory and document requests which were sent to Plaintiff on September 18, 2006, to include any unidentified claims relating to her termination. See id. at

11. As a result, if the amendment were allowed, Defendants would need time to send out and obtain responses to additional interrogatories and document requests. See id. Defendants also point out that the termination letter which Plaintiff received identifies nine specifications of misconduct and that Defendants would need time to interview the witnesses relative to these incidents. See Defendants' Mem. Re Motion to Amend at 11-12 (citing Andrade Decl., Ex. 1J).

In short, the Court accepts Defendants' claim that if the amendment is allowed they would need to propound additional interrogatories and document requests,[11] interview additional witnesses, redepose Plaintiff, and, depending on the information obtained through additional witness interviews and additional discovery requests, possibly seek to depose additional witnesses and to issue additional subpoenas. Id. at 12; cf. Picker Int'l, Inc. v. Leavitt, 865 F.Supp. 951, 957 (D. Mass. 1994)(finding that counterclaim defendant would be "unfairly prejudiced by the belated introduction of yet another claim, which would require additional discovery, and which could and should have been asserted earlier). Thus, the Court finds that Defendants would be prejudiced if the Motion to Amend were granted.[12]

Plaintiff also argues that the decisions of the First Circuit in Rivera v. Puerto Rico Aqueduct & Sewers Authority, 331

---

[11] Defendants note that while they issued four subpoenas after the July 25, 2007, deposition to obtain unemployment benefit records, tax records and worker's compensation records and asked Plaintiff some limited questions relating to her termination at her deposition, the subpoenaed records were either received after Plaintiff's deposition or not received at all. See Defendants' Mem. Re. Motion to Amend at 12-13.

[12] Defendants also argue that the Motion to Amend should be denied because Plaintiff should not reap the benefit of pursuing claims relating to her termination in two different forums simultaneously. See Defendants' Mem. Re Motion to Amend at 14-16. The Court finds it unnecessary to reach this argument.

F.3d 183 (1st Cir. 2003), and Clockedile v. New Hampshire Department of Corrections, 245 F.3d 1 (1st Cir. 2001), "make[] clear that an amendment is proper." Plaintiff's Mem. Re Motion to Amend at 2. While the First Circuit held in those cases "that a judicial complaint can encompass discrete acts of retaliation 'reasonably related and grow[ing] out of the discrimination complained of to the agency ...,'" Rivera, 331 F.3d at 189 (quoting Clockedile at 6)(alterations in original), the Court does not read these cases as standing for the proposition that plaintiffs in employment discrimination cases can amend their judicial complaints at any time to add claims not previously pled. There is no indication in Rivera and Clockedile that the Plaintiff's allegations of subsequent retaliation were not specifically pled in the complaint, nor is there evidence that the plaintiffs in those cases attempted to amend their complaint to add additional claims in an untimely manner without a valid reason. This contrasts with the situation presented here. Thus, the Court is not persuaded that the holdings in Rivera and Clockedile counsel that the Motion to Amend should be granted.

Lastly, Plaintiff argues that it would be a waste of judicial resources if this case were to proceed and she was required to file a separate lawsuit. See Plaintiff's Mem. Re Motion to Amend at 3. While this argument is not without some persuasive appeal, it is more than offset by the fact that the Motion to Amend is untimely and the fact that the Court has found that Defendants would be prejudiced if the amendment were allowed. In addition, if Plaintiff's termination claim is added to the case, it will almost certainly lengthen and complicate the trial (or the filing of motions for summary judgment). Thus, excluding that claim from this case may facilitate a speedier and more efficient resolution of Plaintiff's present claims.

In summary, the Court finds that Plaintiff has not met her

burden of showing some valid reason for her neglect and delay in filing the Motion to Amend. The Court finds that it is untimely and that Defendants would be prejudiced if it were granted. Accordingly, the Motion to Amend is DENIED.

**II. Motions to Compel**

**A. Law**

"As a general rule, if a moving party has unduly delayed in filing a motion for an order compelling discovery, a court may conclude that the motion is untimely." Banks v. CBOCS West, Inc., No. 01 C 0795, 2004 WL 723767, at *1 (N.D. Ill. Apr. 1, 2004)(citing 8A Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, Federal Practice and Procedure § 2285 (2d ed. 1994)). Motions to compel which are filed after the close of discovery have been held to be untimely. See Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 93 (1st Cir. 1996)(finding no abuse of discretion by district court in denying Plaintiff's motion to compel document production which was filed "almost one month after the second-extended discovery period had concluded"); Rivera v. United States, Civil No. 05-1727(GAG), 2006 WL 2707269, at *2 (D.P.R. Sept. 19, 2006)(granting Defendants' motion for summary judgment and noting that although plaintiff had filed discovery requests, he did not follow through on them by filing a motion to compel and permitted the discovery deadline to lapse); Banks v. CBOCS West, Inc., 2004 WL 723767, at *2 (finding motion to compel filed two months after close of discovery to be "clearly untimely"); Mikeron, Inc. v. Exxon Co., U.S.A., 264 F.Supp.2d 268, 275 n.4 (D. Md. 2003)(stating that plaintiff, who had not filed a motion to compel during the almost two years he had to take discovery, "may not do so for the first time at summary judgment"); Mash Enters., Inc. v. Prolease Atl. Corp., No. CIV.A. 01-2437, 2003 WL 251944, at *3 (E.D. Pa. Jan. 31, 2003)(denying motion to compel where plaintiffs "inexplicably"

filed it approximately two months after close of discovery and nearly six months after receiving defendants' responses which included objections); Gault v. Nabisco Biscuit Co., 184 F.R.D. 620, 622 (D. Nev. 1999)(denying motion to compel where plaintiff was aware of the deficiencies "nearly two months before the close of discovery"); id. (stating that in two cases where motions to compel have been allowed notwithstanding the delay in their filing, it was "significant[]" that the motions were "filed before the discovery cut-off date").

**B. Application**

Defendants hand-delivered their discovery responses to Plaintiff's counsel on April 11, 2007. Apparently, the first time Plaintiff communicated in any way to Defendants that the responses were deficient was her counsel's oral statement to that effect on June 1, 2007. However, this statement did not provide any detail as to which responses were allegedly deficient and in what respect. AUSA Nguyen requested such clarification in her June 7th e-mail to Plaintiff's counsel, but she received no information in reply. It was not until Plaintiff's co-counsel telephoned AUSA Nguyen on August 16, 2007, that Plaintiff explained the alleged deficiencies in Defendants' responses. This was the day after the expiration of the final extension of the discovery closure date. Plaintiff did not file her Motions to Compel until August 24, 2007 – 135 days after receiving Defendants' answers to Plaintiff's interrogatories and request for production of documents.

Notwithstanding these circumstances, Plaintiff contends that her Motions to Compel were timely because they were filed within ten days of the close of discovery and a provision of the Pretrial Order states: "Except as provided above with respect to motions in limine, after ten (10) days from the close of discovery, no motions shall be filed except by leave of Court."

Pretrial Order at 4. Thus, Plaintiff apparently takes the position that so long as a motion to compel discovery is filed within ten days of the close of discovery, it cannot be deemed untimely, regardless of the circumstances which preceded its filing. The Court does not share this view and declines to so interpret the Pretrial Order.

A party who receives discovery responses well in advance of the expiration of discovery is under an obligation to review those responses and, if the party deems them deficient, to move within a reasonable period of time to compel responses. The party cannot delay filing a motion to compel with impunity. See Gault v. Nabisco Biscuit Co., 184 F.R.D. 620, 622 (D. Nev. 1999). Here AUSA Nguyen sought to confer with Plaintiff's counsel as early as June 7, 2007, to determine the basis for Plaintiff's counsel's general statement a week earlier that Defendants' discovery responses were deficient. Plaintiff's counsel essentially ignored this request and allowed the period for discovery to expire without communicating to Defendants the basis for her belief. This circumstance weighs strongly against a finding of timeliness relative to the instant Motions to Compel. See Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d at 93 (affirming denial of motion to compel as untimely where defendants had invited plaintiffs to meet regarding discovery dispute and there was no evidence of good cause for movants' delay of more than one month in doing so).

Also weighing against a finding of timeliness is the fact that Plaintiff had apparently concluded as early as of June 1, 2007, that Defendants' discovery responses were deficient. Yet, Plaintiff did not file the Motions to Compel until August 24, 2007, almost three months later. See Gault v. Nabisco Biscuit Co., 184 F.R.D. at 622 (denying motion to compel where Plaintiff was aware of the deficiencies nearly two months before the close

of discovery and "[n]othing indicates that the delay in filing the motion to compel was caused by matters outside the control of [plaintiff] and his attorney"). Accordingly, the Court finds that the Motions to Compel are untimely.

Even if the Court were to overlook the untimely nature of these motions, granting them would be prejudicial to Defendants and would disrupt the efficient functioning of the litigation process. Given the sheer number of individual responses which Plaintiff contends are deficient,[13] granting them would be equivalent to reopening discovery and potentially engendering more discovery disputes. See Mash Enters., Inc. v. Prolease Atl. Corp., 2003 WL 251944, at 3 (denying motion to compel where "in order to grant [p]laintiff's [m]otion, the Court would essentially be opening discovery once again and engendering more potential discovery disputes"). Reopening and/or continuing discovery in this action without good cause would not only be prejudicial to the Defendants, who have attempted to complete discovery, but it would further disrupt the efficient functioning of this Court. See id.

Moreover, even if the Court were to put aside all of the foregoing considerations, it would in large measure deny the Motions to Compel for the following reasons. To the extent that the motions seek information and/or documents relating to Plaintiff's termination, the Court has already determined that the Motion to Amend, adding that claim, should be denied. Thus, Plaintiff's justification or need for obtaining this particular information has been rejected. Of the remaining interrogatories and document requests which are at issue, many are clearly overly

[13] Plaintiff seeks to compel further responses to all nineteen interrogatory requests and forty-six numbered document requests. See Motion to Compel Further Answers; Motion to Compel Further Documents.

broad[14] and/or unduly burdensome.[15] Thus, Defendants' objections on these grounds are well founded as to many of the requests.

In conclusion, the Motions to Compel are denied because they are untimely, Defendants would be prejudiced if they granted, and the orderly processes of this Court would be undermined. Even if the Court were to disregard these reasons, it would still in large measure decline to grant Plaintiff the relief she is seeking as Defendants' objections to many of the individual interrogatories and document requests are well founded.

**Summary**

For the reasons stated in Part I, Plaintiff's Motion to Amend is denied. Plaintiff's Motions to Compel are denied for the reasons stated in Part II.

So ordered.

ENTER:

/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
November 9, 2007

---

[14] Several seek information from the time Plaintiff began working for the Commissary to the present. See Interrogatory Nos. 4-8, 10-11, 15, 18-19. As Plaintiff's employment with Defendants commenced in October of 1988, see Amended Complaint ¶ 9, this is a period of nineteen years.

[15] A particularly egregious example of the burdensomeness of Plaintiff's discovery requests is Interrogatory No. 4. Answering that interrogatory would require Defendants to interview every current or former employee at the Newport Commissary for an nineteen year period and ask each of them whether they were aware of any person, working at the Newport Commissary, doing any one of more than thirty described acts of misconduct.