**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **ROSEZOLA SELLERS,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **C. A. No. 05-381S** |
| | ) | |
| **UNITED STATES DEPARTMENT** | ) | |
| **OF DEFENSE AND ROBERT M. GATES,** | ) | |
| **SECRETARY OF THE DEPARTMENT** | ) | |
| **OF DEFENSE,** | ) | |
| **Defendants.** | | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

COMES NOW, Defendants, United States of Department of Defense and Robert M. Gates, Secretary of the Department of Defense, through undersigned counsel, and submit the following Reply in Support of Defendants' Motion for Summary Judgment.

## I. Plaintiff's Summary Judgment Response Fails to Comply With Federal Rule of Civil Procedure 56 and Local Rule of Civil Procedure 56

At the outset, Defendants note that Plaintiff's Memorandum In Support of Her Objection to Summary Judgment fails to include the relevant portions of the deposition transcripts that she cites, and in some instances, fails to contain any citation to the record. Although in a footnote Plaintiff suggests that the Court can request these deposition transcripts from Plaintiff (Pl.'s Supp. Mem. at 1 n.1), the Court should not be burdened with sifting through Plaintiff's motion in order to determine what evidentiary materials should be provided in support of Plaintiff's opposition to summary judgment.

Federal Rule of Civil Procedure 56(e) provides that a party opposing summary judgment "may not rest upon the mere allegations or denials" of that party's pleading, but must "by

affidavits or as otherwise provided by this rule . . . set forth specific facts that there is a genuine issue for trial." "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." Stults v. Conoco, Inc., 76 F.3d 651, 657 (5th Cir. 1996) (internal citations and quotations omitted).

Further, Local Rule of Civil Procedure 56 provides that any denied or controverted fact must be supported by affidavit or other evidentiary materials and that relevant portion(s) of documents shall be included in the attachments. To the extent that Plaintiff's Response cites to facts in support of her argument which are not a part of the summary judgment record, those arguments are easily dismissed.

## II. Summary Judgment is Appropriate on Plaintiff's Claims that She Failed to Administratively Exhaust

### A. Denial of Leave for the Dates of August 7, 8, 29, and 31, 2003

Notably, Plaintiff does not dispute that she failed to contact an EEO counselor within 45 days of July 14, 2003, the date that her leave request for the dates of August 7, 8, 29, and 31, 2003, were denied. Plaintiff, however, argues that "Defendants [sic] argument is without merit because it fails to take into account the doctrine of accrual." (Pl.'s Supp. Mem. at 4.) Interestingly, Plaintiff cites case law with respect to the doctrine of accrual, but then cites no evidentiary basis upon which to apply the doctrine of accrual in this case. For example, Plaintiff does not mention, or cite to any evidence suggesting that she was unaware that her leave was being denied as to render the doctrine of accrual relevant to this case. (See Pl.'s Supp. Mem. at 5-6.)

**B. Disparate Treatment With Respect to Promotions**

Plaintiff argues that her race and retaliation claims relating to her alleged denial of promotion were within the scope of the EEOC investigation. (Pl.'s. Supp. Mem. at 6-8.) In support of her position, Plaintiff relies primarily on a passing reference in a statement submitted during the EEOC investigation that "the date is Feb. 15, 2005. I still have not received my GS-7" (Pl.'s Summ. J. Ex. 2) and on a written rebuttal dated February 24, 2005, in which Plaintiff complained that John Blythe "will do anything to keep me from receiving my GS-7" (Pl. Summ. J. Ex. 2). Plaintiff's argument is without merit as to her race claim relating to the denial of a promotion.

Plaintiff fails to show that her race claim relating to the denial of a promotion falls within the scope of the EEOC investigation. Typically, "in employment discrimination cases, '[t]he scope of the civil complaint is . . . limited by the charge filed with the EEOC and the investigation which can reasonably be expected to grow out of the charge.' " Lattimore v. Polaroid Corp., 99 F.3d 456, 464 (1st Cir. 1996) (quoting Powers v. Grinnell Corp, 915 F.2d 34, 38 (1st Cir. 1990)). "A plaintiff in [her] administrative charge must 'describe the essential nature of the claim and . . . identify the core facts on which it rests.' " Ladenheim v. American Airlines, Inc., 115 F.Supp.2d 225, 233 (D.P.R. 2000); see also Lattimore, 99 F.3d at 464 ("Even a pro se complainant is required to describe the essential nature of the claim and to identify the core facts on which it rests.").

Plaintiff's EEO complaint makes no reference to any promotion claim. (See Defs.' Summ. J. Ex. 12.) Moreover, after submitting her initial EEO complaint, Plaintiff amended her EEO complaint and failed to mention any denial of promotion claim. (See Defs.' Summ. J. Ex.

1b at D-0099.) Further, Plaintiff's passing reference that she has not received her GS-7 does not indicate whether she is alleging that her failure to receive the GS-7 is based on race or any other Title VII basis. See Swallow v. Fetzer Vineyards, 46 Fed. Appx. 636, 645-46 (1st Cir. 2002) (holding that plaintiff's failure to promote claim was not within the scope of investigation where, in affidavit attached to her administrative complaint, plaintiff referenced practice of failing to promote women and where she did not set forth specific facts of her failure to promote claim).

In addition to the above, Plaintiff cites to declarations of John Blythe and Mary Gibson that were responsive to the issue of why her work schedule was changed on December 12, 2004, as evidence that the EEOC investigation should have uncovered a denial of promotion claim.[1] Plaintiff's shifting of blame to the EEOC ignores the agency charge and the reasonable investigation that springs from that charge. See Kenney v. MML Investors Servs., Inc., 266 F.Supp.2d 239, 247 (D. Mass. 2003) (rejecting plaintiff's argument that the scope of her civil action should not be determined by the agency charge, or, the actual administrative investigation, but what the EEOC "was given the opportunity to do"). In light of the above, Plaintiff's administrative complaint is not reasonably construed to incorporate a denial of promotion claim based on race, nor could a failure to promote claim based on race be found reasonably within the scope of the agency investigation.

With respect to Plaintiff's retaliation claim regarding the denial of promotion, in light of

[1] Notably, as she failed to do in her administrative complaint, Plaintiff presently does not identify on what Title VII basis she is relying in asserting this claim. (See Pl.'s Supp. Mem. at 6-8.) Also notable is that although she presently argues that her administrative claim included a denial of promotion claim, at her deposition, Plaintiff could not recall if she ever filed an EEO complaint with respect to the alleged denial of promotion. (Defs.' Summ. J. Ex. 2, Pl. Dep. 21:15-22:2.)

Clockedile v. New Hampshire Department of Corrections, 245 F.3d 1, 6 (1st Cir. 2001), Defendants concede that Plaintiff has preserved this claim.[2] However, for the reasons articulated below and in Defendants' Corrected Memorandum in Support of Summary Judgment, summary judgment is still proper. Plaintiff has failed to establish her prima facie case and has failed to establish that the Defendant's reason was pretextual with respect to this claim.

**C. Fourteen-Day Suspension Decision Letter Issued on April 11, 2005**

Plaintiff argues that her fourteen-day suspension decision letter issued on April 11, 2005, does not need to be administratively exhausted when she elects to pursue her remedies through the union grievance procedure. Plaintiff argues that Defendants "ignore" a line of Supreme Court cases including Alexander v. Gardner-Denver Co., 415 U.S. 36 (1974) and Chandler v. Roudebush, 425 U.S. 840 (1976) (see Pl.'s Supp. Mem. at 10), which stand for the general proposition that employees claiming Title VII violations may pursue their claims in federal court. Notably, these Supreme Court cases did not concern plaintiffs who failed to exhaust their administrative remedies. Thus, Plaintiff appears to misconstrue Defendants' argument.

Defendants do not argue, as Plaintiff suggests, that the collective bargaining agreement in this case waives any right to judicial review. Rather, Plaintiff has a choice in pursuing her

---

[2] In the First Circuit, claims for retaliation are a narrow exception to the general rule requiring exhaustion of administrative remedies. Francheschi v. U.S. Dep't of Veterans Affairs, No. 06-2677, 2008 WL 240274, at *3 (1st Cir. Jan. 30, 2008) (attached as Ex. 39). Retaliation claims "may ordinarily be bootstrapped onto the other Title VII claim or claims arising out of the administrative charge and considered by the district court, even though it has not been put through the administrative process." Id. In Clockedile v. New Hampshire Department of Corrections, 245 F.3d 1, 6 (1st Cir. 2001), the First Circuit stated that " retaliation claims are preserved so long as that "retaliation claim is reasonably related to and grows out of the discrimination complained of to the [administrative] agency- e.g., the retaliation claim is for filing the agency complaint itself." Id.

remedies through a Title VII complaint or negotiated grievance procedure. See 29 C.F.R. § 1614.301(a). The Federal Labor-Management Relations Act, 5 U.S.C. §§ 7101-35, provides that "[a]n aggrieved employee affected by a prohibited personnel practice [including discrimination] which also falls under the coverage of the negotiated grievance procedure may raise the matter under a statutory procedure or the negotiated procedure, but not both." 5 U.S.C. § 7121(d). This choice is an irrevocable one. See Maddox v. Runyon, 139 F.3d 1017, 1021 (5th Cir. 1998) (observing that § 7121(d) precludes covered federal employees from pursing both the EEO statutory procedure and a union-assisted negotiated grievance procedure). "Whichever route the employee chooses, she must then exhaust her administrative remedy before pursuing her claim in court." Frasure v. Principi, 367 F.Supp.2d 245, 253 (D. Conn. 2005).

Here, Plaintiff failed to allege any race or retaliation claims with respect to her fourteen-day suspension in her union grievance. Plaintiff does not dispute in response to the Defendants' summary judgment motion that she failed to argue in her grievance that the fourteen-day suspension imposed was due to race or retaliation.

Such was the case in Redmon v. Mineta, No. 06-5272, 2007 WL 1837134 (6th Cir. 2007) (Defs.' Summ. J. Ex. 28), where the union filed a grievance challenging Redmon's suspension, but did not argue that the discipline imposed was due to discrimination, retaliation, hostile work environment, or reprisal. Id. at *4. In that case, Redmon demanded that the union pursue the matter through arbitration, but the union declined to proceed with arbitration. Id. at *2. Thereafter, Redmon contacted an EEO counselor and then filed an EEO complaint. Id. After the EEO denied her complaint, Redmon filed suit in district court. Id. The district court granted summary judgment because Redmon failed to exhaust her administrative remedies in that she had

not contacted an EEO counselor within 45 days of the alleged discriminatory act. Id.

On appeal, the Sixth Circuit affirmed the district court's grant of summary judgment on other grounds. Id. at *4-5. The Sixth Circuit held that Redmon failed to exhaust her administrative remedies because she failed to raise her discrimination, sexual harassment, hostile work environment, and retaliation claims in the union grievance procedure. Id. Thus, as in Redmon, because Plaintiff failed to exhaust her administrative remedies in failing to raise her discrimination and retaliation claims with respect to her fourteen-day suspension in her union grievance, she is barred from litigating these claims in this Court.

In addition, Plaintiff did not pursue her grievance to arbitration, which was the next step in the union grievance procedure. (Defs.' Summ. J. Ex. 15 at 65, 67). Therefore, Plaintiff's failure to pursue the union grievance procedure to the end constituted a failure to exhaust her administrative remedies with respect to her suspension. See O'Dwyer v. Snow, No. 00CIV8918, 2004 WL 444534, at *8 (S.D.N.Y. March 10, 2004) ("These formal, written grievances . . . constituted irrevocable elections to pursue those issues through the union procedures. . . . Thus, for these claims to be actionable in this Court, Plaintiff must have exhausted the grievance procedure set out in her union's collective bargaining agreement.") (Defs.' Summ. J. Ex. 27); Guerra v. Cuomo, 176 F.3d 547, 548-552 (D.C. Cir. 1999) (construing § 7121(d) and affirming district court's decision dismissing plaintiff's complaint where her "earlier decision to file a union grievance constituted an irrevocable election of remedies" and plaintiff failed to exhaust her administrative remedies by not taking her grievance to Step 2 or Step 3 or to arbitration); .

In response to these arguments, Plaintiff states in a footnote, "[i]t was the union- not Sellers- who decided not to pursue her grievance to the final step of arbitration," (Pl.'s Supp.

Mem. at 10, n.10). However, Plaintiff offers no evidentiary support for her conclusory statement. Namely, Plaintiff provides no evidence that she petitioned the Union to pursue arbitration, or evidence that the Union denied her request for arbitration. Plaintiff has not alleged nor provided any support that the Union did not fairly represent her in this matter.

Even assuming that Plaintiff had alleged her discrimination and retaliation claims in the union grievance procedure, that she petitioned the Union to pursue arbitration, and that the Union denied her request, Plaintiff provides no evidence that she timely appealed the agency's decision on her grievance. Title 5, United States Code, § 7121(d) specifically provides that, "[s]election of the negotiated procedure in no manner prejudices the right of an aggrieved employee . . . to request the Equal Employment Opportunity Commission to review a final decision in any other matter involving a complaint of discrimination of the type prohibited by any law administered by the Equal Employment Opportunity Commission." Moreover, 29 C.F.R. § 1614.401(a) provides that "[a] complainant may appeal an agency's final action," and "[a]ppeals . . . must be filed within 30 days of receipt of the dismissal, final action or decision."

In this case, Plaintiff provides no evidence that she filed a timely appeal with the EEOC after the agency's denial of her grievance in Step 2 of the grievance procedure. In Quint v. A.E. Staley Manufacturing Co., 172 F.3d 1, 8 n.2 (1st Cir. 1999), the plaintiff, prior to bringing suit, had filed an unsuccessful grievance under the governing collective bargaining agreement and her union had declined to proceed to arbitration. The Quint court duly noted that plaintiff then filed a timely claim with the EEOC. Id. Such was not the case here. Accordingly, Plaintiff cannot show that she exhausted her administrative remedies with respect to her fourteen-day suspension.

## III. Summary Judgment Should Be Granted Because Plaintiff Cannot Establish Race Discrimination As Alleged in Count I

### A. Prima Facie Case For Race Discrimination

A plaintiff alleging race discrimination establishes a prima facie case when plaintiff shows that: 1) she is a member of a protected class; 2) she was qualified for the job; 3) the employer took an adverse action against her; and 4) the position remained open or was filled by a person with similar qualifications. See Sher v. U.S. Dep't of Veterans Affairs, 488 F.3d 489, 507 n.19 (1st Cir. 2007); Kosereis v. Rhode Island, 331 F.3d 207, 212-13 (1st Cir. 2003). However, "[t]he elements may vary depending on the specific facts of a case." Swallow v. Fetzer Vineyards, 46 Fed. Appx. 636, 643 (1st Cir. 2002). As this case does not involve termination or demotion claims, Defendants assert that the fourth prong, as stated above, is not applicable, as was the case in Sher (demotion claim), Kosereis (termination claim), and as Plaintiff cites in Feliciano De La Cruz v. El Conquistador and Country, 218 F.3d 1, 5 (1st Cir. 2000) (termination claim). As the fourth prong is not applicable, Plaintiff should instead be required to provide evidence that raises an inference of discrimination. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510 (2002) (emphasizing that "the prima facie case relates to the employee's burden of presenting evidence that raises an inference of discrimination").

Although Plaintiff is correct that she need not show that she was treated differently as part of her prima facie case, such a showing helps establish an inference of discrimination in aid of her prima facie case. Cf. Mills v. Philadelphia Gas Works, No. 07-2481, 2008 WL 382400, at *1-2 (3d Cir. Feb. 13, 2008) (affirming district court's grant of summary judgment where plaintiff did not make prima facie showing of Title VII racial discrimination because he offered

no evidence that African-Americans were treated less favorably than non-African Americans) (Ex. 40.[3]) Even assuming that the comparative evidence is not properly considered in Plaintiff's prima facie case, the arguments that Defendants assert in their corrected memorandum in support of summary judgment can still be considered in determining that Plaintiff has failed to show Defendants' proffered reasons for their actions were pretextual.

### B. Plaintiff Cannot Establish that She Suffered an Adverse Action to Prove Her Prima Facie Case of Race Discrimination with Regard to Denial of Leave and Restoration of Leave

Plaintiff asserts that her denial of leave and denial of restoration of leave do not constitute an adverse actions. In her argument, Plaintiff attempts to distinguish Box v. Principi, 442 F.3d 692, 697 (8th Cir. 2006), which held that Box's denial of annual leave in that case was not an adverse action. Plaintiff argues that Box did not lose any vacation time because Box took sick leave on the day he was denied annual leave. Plaintiff's argument is contrary to the undisputed facts. Here, Plaintiff is alleging that she requested and was wrongfully denied leave for November 18-22, 2003, and that these hours were not restored. Yet, Plaintiff admits that on November 25, 2003, she submitted an application for forty hours of sick leave for the dates of November 18-22, 2003, and that the leave request was approved. (Pl.'s St. Disputed Facts ¶¶ 46-47; see also Defs.' Summ. J. Ex. 4a.). Thus, Plaintiff's attempt to distinguish Box from the case at hand fails in light of Plaintiff's own admission that she took sick leave.

Plaintiff also admits that although she was denied leave for certain dates in 2003, there were many occasions on which she was approved both annual and sick leave for that year, even

[3] Defendants' Summary Judgment Exhibits 1-38 were previously provided in conjunction with Defendants' Corrected Memorandum In Support of their Motion for Summary Judgment.

though she failed to include these dates on a leave planner. (Pl.'s St. Disputed Facts ¶ 48.) In fact, Plaintiff admits that she was granted 195 hours of leave in 2003 alone. (Pl.'s St. Disputed Facts ¶¶ 49-50.) As in Allen v. Potter, 115 Fed. Appx. 854, 861 (7th Cir. 2004), when the leave denials are considered in the context of Plaintiff's leave record, the denial of leave cannot be considered anything more than "a mere inconvenience."

Moreover, as Plaintiff herself points out on Page 6 of her response to Defendants' Summary Judgment Motion:

> Defendants only denied Sellers the right to take leave on the four dates she selected in August. As Blythe explained in his deposition, Sellers was able to reapply for leave on other dates. Blythe Deposition 272-73.

(Pl.'s Supp. Mem. at 6.) In fact, it is undisputed that Plaintiff requested and received twenty-four hours of annual leave from October 22, 2003, to October 24, 2003. (Pl.'s St. of Disputed Facts ¶ 38.) Thus, the fact that she could take leave on other dates, other than those requested, show that her annual leave was not "taken" from her so as to amount to an adverse action.

Plaintiff's case can be distinguished from Allah v. City of New York Department of Parks & Recreation, 47 Fed. Appx. 45 (2d Cir. 2002), a case that Plaintiff cites for the proposition that "loss of vacation and pay are adverse actions." In Allah, the plaintiff was disciplined by loss of pay and vacation days as a result of a disciplinary hearing in which he was convicted of several charges including use of cocaine, excessive absences, and failure to promptly notify his employer of an arrest. Id. at 47. In this case, as Plaintiff herself has pointed out, Plaintiff was able to reapply for leave on other dates. (Pl.'s Summ. J. Response at 6.)

Also, Plaintiff's case can be distinguished from Coffman v. Tracker Marine, L.P., 141 F.3d 1241, 1245 (8th Cir. 1998), a case Plaintiff cites for the proposition that "denial of vacation

days was sufficient adverse employment action to sustain claim because it was material change in existing employment benefits." (Pl's Supp. Mem. at 13.) In Coffman, unlike this case, Coffman had explicitly bargained for and received the right to take federal holidays off with pay. Id. at 1243. Thus, the court deemed the denial of these days off an adverse action. Accordingly, Plaintiff fails to meet her burden of showing that her denial of leave and her denial of restoration of leave constitute adverse actions.

### C. Plaintiff's Opposition Falls Short of Showing that Defendants' Reasons for Their Actions Are Pretextual

To meet Plaintiff's burden of showing pretext, Plaintiff must prove not only that the reason articulated by the employer for its decisions was a sham, but also that the true reason was Plaintiff's race. Rodriguez-Cuervos v. Wal-Mart Stores, Inc., 181 F.3d 15, 20 (1st Cir. 1999). In this case, Plaintiff falls short of meeting that burden. Plaintiff fails to show that similarly situated non-black employees were treated more favorably or that Defendants' actions were based on her race. Rodriguez-Cuervos, 181 F.3d at 22 (affirming summary judgment where "fatal weakness in Rodrigquez's case is his failure to present any evidence that Wal-Mart's actions were predicated on the basis of race or national-origin").

#### 1. Plaintiff Fails to Show that Similarly Situated Non-Black Employees Were Treated More Favorably

A substantial portion of Plaintiff's Memorandum in Support of her Objection to Defendants' Motion for Summary Judgment focuses on allegedly similarly situated employees who were treated differently. (See Pl.'s Supp. Mem. at 17-30.) Plaintiff argues that she can show pretext because similarly situated non-black employees were treated more favorably in that

they were not disciplined for their conduct.[4] "A claim of disparate treatment based on comparative evidence must rest on proof that the proposed analogue is similarly situated in all material respects." Perkins v. Brigham & Women's Hosp., 78 F.3d 747, 751 (1st Cir. 1996); see also Dartmouth Review v. Dartmouth College, 889 F.2d 13, 19 (1st Cir. 1989).

Thus, in offering any comparative evidence, Plaintiff bears the burden of showing that the individuals with whom she seeks to be compared "must have dealt with the same supervisor, been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Walker v. Ohio Dep't of Rehabilitation and Correction, 241 Fed. Appx. 261, 266 (6th Cir. 2007) (emphasis added); see also, e.g., Rodriguez-Cuervos, 181 F.3d at 21 (quoting Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992)); Childs-Pierce v. Utility Workers Union of America, 383 F.Supp.2d 60, 70 (D.D.C. 2005); Ineichen v. Aeritech, 410 F.3d 956, 960-61 (7th Cir. 2005); Antonocci v. Life Care Centers of America, Inc.,, C.A. No. 06-108, 2008 WL 417675, at *9 (Lisi, C.J.) (D.R.I. Feb. 13, 2008) (attached as Ex. 41); Mijeias Miranda v. BBI Acquisition Corp., 120 F.Supp.2d 157, 165 n.7 (D.P.R. 2000). While the comparison cases need not be perfect replicas, the test is whether "a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protaganists similarly situated." Rodriguez-Cuervos, 181 F.3d at 21 (quoting Dartmouth Review, 889 F.2d at 19).

---

[4] Contrary to Plaintiff's argument, the only discipline at issue here is Plaintiffs' letter of reprimand and her fourteen-day suspension that was not administratively exhausted. Based on the Court's ruling denying Plaintiff's belated attempt to amend her claim to include claims relating to her termination, her termination is not at issue in this case. Indeed, her termination claims are a part of a separate case filed with this Court, Sellers v. United States Department of Defense, et al., C.A. No. 07-418S.

"A plaintiff does not carry her burden of demonstrating pretext on a motion for summary judgment where she provides merely 'sketchy evidence lacking a sufficient foundation for a legally relevant comparison' of allegedly similarly situated employees." Booker v. Mass. Dep't. of Public Health, 527 F.Supp.2d 216, 227 (D. Mass. 2007). Indeed, "[i]t is not the court's burden to sift through the summary judgment record and compare the co-worker's alleged conduct to the defendant's policy to determine whether this is in fact the case; it is the plaintiff's burden to identify the factual basis in the summary judgment record for this contention." Andrews v. American Red Cross Blood Servs., 251 F.Supp.2d 976, 982 (D. Me. 2003).

Simply put, Plaintiff has not met her burden of showing that the alleged offenses committed by William McCollum, Brenda Venable, Mike Texeira, and Ryan Diego to which she points in her opposition memorandum were similar to Plaintiff's conduct. Employees are not similarly situated when their workplace problems are, as here, entirely different. "[T]he comparator's misconduct must be nearly identical to the plaintiff's in order to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." Silvera v. Orange County Sch. Bd., 244 F.3d 1253, 1259 (11th Cir. 2001); see also Santa Cruz v. Snow, 402 F.Supp.2d 113, 125 (D.D.C. 2005) ("In evaluating whether the plaintiff and the relevant co-worker are similarly situated, '[t]he nature of the offenses committed and the punishments imposed are the most significant variables in a case alleging discrimination in connection with disciplinary actions.").

**a. William McCollum**

Plaintiff argues that William McCollum is a similarly situated employee who was treated more favorably than Plaintiff in that he was "insubordinate, rude, disrespectful and disruptive."

(Pl.'s Supp. Mem. at 19.) First, Plaintiff points to an incident involving McCollum and Blythe in which McCollum stated to Blythe that Blythe was lucky to have Furtado running the department. (Pl.'s Supp. Mem. at 19.) Plaintiff states that Furtado described McCollum's conduct as disrespectful. (Pl.'s Supp. Mem. at 19.) However, a close examination of Furtado's deposition testimony reveals that while Furtado agreed that raising one's voice to a supervisor can be considered disrespectful (Ex. 42, Furtado Dep. 88:23-25.), Furtado did not consider McCollum's conduct disrespectful under the circumstances:

> Q. My question to you was, did you consider him to be disrespectful?
>
> A. Not really. He was just, he was voicing his opinion of the way the store looked and how John was in his office. He should be out helping out, which, you know, John did at times. He came out on the sales floor. It was more of his opinion that I was doing more.

(Ex. 42, Furtado Dep. 87:23-88:7).

Plaintiff fails to show how McCollum's conduct was similar to her own case in which she received a letter of reprimand for <u>both</u> disrespectful conduct and for failing to follow the instructions of her supervisor. (Defs.' Summ. J. Ex. 1b at D-0194.) In addition, the two incidents involve different supervisors. In Plaintiff's case, the conduct involved supervisor Gibson, whereas, in McCollum's case, the conduct involved supervisor Blythe.[5]

---

[5] Plaintiff argues, without describing, another incident involving McCollum and Blythe. Here, Plaintiff cites to the pages of the deposition transcript and leaves it up to the Court to figure out how this conduct was similar to Plaintiff's conduct for which she was disciplined. (Pl.s' Supp. Mem. at 19.) A review of McCollum's deposition transcript reveals that the incident to which Plaintiff is likely referring involve McCollum discussing with Blythe why his leave was being canceled and Blythe explaining to McCollum that he appreciated what McCollum did and that after the reset, then he could take leave. (Ex. 43, McCollum Dep. 22:12-23:12.). Again, Plaintiff fails to show how this amounted to disrespectful conduct or that McCollum failed to follow the instructions of his supervisor.

Plaintiff also asserts generally that McCollum and other "employees" refused to do the things that Gibson asked them to do, but points to no specific examples. (Pl.'s Supp. Mem. at 20.) While Gibson testified that employees, like McCollum, have stated to her that they did not want to do something, they still obeyed her instruction. (Ex. 44, Gibson Dep. 213:15-214:219). Plaintiff's bare-bones assertions do not even come close to showing that McCollum as well as other unidentified employees are similarly situated to her.

Plaintiff further states that McCollum was rude to Gibson, was sarcastic, was loud and had an "attitude," yet was not disciplined by Gibson. (Pl.'s Supp. Mem. at 20.) However, Plaintiff fails to show how McCollum is similarly situated, given that these general incidences of disagreement between Gibson and McCollum were resolved and never rose to the level disrespectful conduct, involving failing to obey the instructions of a supervisor. (Ex. 44, Gibson Dep. 219:2-220:20.)

Plaintiff argues that Gibson allowed McCollum to come in two hours late without disciplining him. There is no evidence of record to support this claim. Even assuming that Gibson had competent proof that McCollum came in late and decided not to discipline him, Plaintiff fails to explain how McCollum's tardiness was similar to Plaintiff's disrespectful conduct and failure to follow the instructions of a supervisor. See also Phillips v. Holladay Property Servs., Inc., 937 F.Supp. 32, 36-37 (D.D.C. 1996) (white employee who arrived at work late not "similarly situated" to black colleague fired for insubordination).

**b. Brenda Venable**

Plaintiff argues that Brenda Venable was a similarly situated employee who was treated differently than she was. (Pl.'s Supp. Mem. at 22.) Yet, Plaintiff points to no evidence proving

her point. In fact, Venable and Plaintiff had different supervisors. (See Defs.' Summ. J. Ex. 18 at D-0144, Ex. 1b at D-0161 and Ex. 45, Venable 18:2.) In addition, Venable's alleged conduct of generally cursing at work and Plaintiff's conduct of becoming loud and failing to follow the instructions of supervisor are not one in the same. Even if they were, Venable received a letter a reprimand for cursing at Blythe. (Ex. 45, Venable 27:23-29:5.)

While Plaintiff attempts to use Venable as a similarly situated employee who was treated more favorably, she then points to Blythe's bad treatment of Venable in which Blythe charged Venable with absence without leave ("AWOL"). (Pl's Summ. J. Ex. 7.) Once again, Plaintiff fails to show how Venable's absence without leave is similar to Plaintiff's conduct. Moreover, any argument that Venable was treated more favorably by being charged with AWOL is meritless.

**c. Mike Texiera**

Plaintiff further argues that Mike Texiera is a similarly situated white employee who was treated more favorably than Plaintiff. Plaintiff cites without record evidence to an incident in which Texeira was suspended for a week for assaulting Magnuson, a fellow employee. Plaintiff fails to explain how Texeira's conduct for which he was suspended demonstrates he was treated more favorably.

Plaintiff further argues that Texeira refused to follow Gibson's orders, but was not disciplined. Gibson testified that Texeira agreed to do what Gibson told him, was not loud, did not refuse to follow her instruction, and found someone else to do the job by speaking with Furtado. (Ex. 44, Gibson Dep. 118:12-119:15.) In Plaintiff's case, Gibson not only offered to assist her in stocking (Defs.' Summ. J. Ex. 18 at D-0146, Ex. 1b at D-0195; Ex. 44, Gibson Dep.

74:23-75:7), but then had to stock the shelves herself as a result of Plaintiff's refusal to follow her instruction (Ex. 44, Gibson Dep. 75:19-76:3).

**d. Ryan Diego**

Plaintiff also asserts that Ryan Diego is "instructive on the issue of pretext." (Pl.'s Supp. Mem. at 26.) Diego, a white employee (Ex. 44, Gibson Dep. 216:5-6.), had an inappropriate drawing on his computer (Ex. 44, Gibson Dep. 124:12-24). This conduct, for which Diego was disciplined, cannot be said to be similar to Plaintiff's.[6]

**e. Charles Cloud and Thelma Edens**

Plaintiff attempts to assert that other non-whites, Charles Cloud and Thelma Edens, had issues on the job, although she does not explain how those were race-related. Plaintiff alleges that Cloud was treated less favorably than whites, but fails to articulate how. (See Pl.'s Supp. Mem. at 29.) Instead, Plaintiff simply references Cloud's affidavit, and leaves the Court to figure out how he was treated less favorably. (See Pl.'s Supp. Mem. at 29.) Citing to Cloud's affidavit, however, is not sufficient for Plaintiff to avoid summary judgment.

Federal Rule of Civil Procedure 56(e) provides, "opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible evidence, and shall show affirmatively that the affiant is competent to testify to matters stated therein." "The law regarding this dispute is clear . . . that [if] affidavits submitted in opposition to a motion for summary judgment merely reiterate allegations made in the complaint without providing specific factual information made on the basis of personal knowledge, they are insufficient." Santiago-

---

[6] Defendants note that Richard Walsh was later terminated from his position for misconduct documented by Gibson. (Ex. 44, Gibson Dep. 234:15-17).

Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 53 (1st Cir. 2000).

In this case, Cloud's affidavit contains broad conclusions and hearsay evidence, fails to contain specific time ranges when the alleged incidents occurred, and is not based on personal knowledge. See Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990) ("Hearsay evidence, inadmissible at trial, cannot be considered on a motion for summary judgment."); Cadle Co. v. Hayes, 116 F.3d 957, 961 n.5 (1st Cir. 1997) (finding that an affidavit did not contain sufficient specificity to block summary judgment); Cf. Petrarca v. Southern Union Co., C.A. No. 04-310S, 2007 WL 547690, at *20 (Smith, J.) (D.R.I. Feb. 16, 2007) (affidavits containing specifics as to time range, conduct and statements were sufficient) (attached as Ex. 47). Thus, Cloud's affidavit should not be considered. Even if this Court were to consider Cloud's affidavit, Plaintiff still has not met her burden of showing that Cloud is a similarly situated employee.

With regard to Thelma Edens, Plaintiff fails to establish how she is a comparative employee to Plaintiff. Plaintiff asserts that Edens is "Filipino 'of color.'" (Pl.'s Supp. Mem. at 29.) Notably, Plaintiff's claims here are based on her being in the protected class of "black." (See Defs.' Summ. J. Ex. 12 at § 10; Amended Compl. ¶¶ 8, 10.) Neither her EEO complaint, nor her district court Complaint reference "color." (See Defs.' Summ. J. Ex. 12 at § 10; Amended Compl. ¶¶ 8, 10.) Even assuming that Edens is in Plaintiff's protected class, Edens' unsworn statement in Plaintiff's Exhibit 10 should not be considered.[7] See Adickes v. S.H. Kress & Co., 398 U.S. 144, 158 n.17 (1970) (unsworn statement did not meet the requirements of Fed. Rul. Civ. Pr. 56(e)). Further, Plaintiff fails to show how Edens' conduct was similar to

[7] Federal law, however, does provide an alternative to making a sworn statement, but requires that the statement include a handwritten averment, signed and dated, that the statement is true under the penalties of perjury. See 28 U.S.C. § 1746.

her own or that Edens was also disciplined for her conduct.

### 2. Plaintiff Cannot Show Pretext With Respect to Her Claims of Denial of Promotion, Change in Work Schedule, Leave Request and Restoration, and Letter of Reprimand

#### a. Promotion and December 12, 2004, Change in Work Schedule

Plaintiff claims that Defendants' reason for not giving her a GS-7 promotion and for her December 12, 2004, change in work schedule to accomplish CAO duties is pretextual. (Pl.'s Supp. Mem. at 33, 36-37.) Plaintiff argues that Defendants' reason is pretext because she completed the training for her job. (Pl.'s Supp. Mem. at 33.). While Plaintiff asserts that McCollum testified that Plaintiff completed all of her training, McCollum actually stated that he had provided her CAO training. (Ex. 43, McCollum Dep. 111:10-20.) McCollum, who was a co-worker and not a supervisor, never stated that the training he provided was the only training Plaintiff was required to undergo or that training alone, regardless of performance, guaranteed a GS-7 promotion. (See Ex. 43, McCollum Dep. 111:10-20.) Moreover, Blythe explained that he changed her work schedule because he needed to know whether she could perform the afternoon functions of her job before he could promote her. (Defs.' Summ. J. Ex. 3, Blythe Decl. ¶ 6; Ex. 3a; Ex. 46, Blythe Dep. 266:13-25).

Plaintiff's schedule change is also consistent with her position description which states that CAOs "[m]ay work uncommon tours of duty as required to meet demands of effective mission accomplishment." (Ex. 1b at D-0181.) Moreover, the Training Plan for Computer Assisted Ordering ("Training Plan"), specifically supports changing Plaintiff's schedule to cover afternoon functions, particularly when a store has two CAOs. (Defs.' Summ. J. Ex. 1d at 32.) In addition, the Training Plan provides a 'model' task list that identifies CAO processing that will

occur throughout the day, including afternoon hours. ( Defs.' Summ. J. Ex. 1d at 33-38.)

Plaintiff further alleges that her job performance shows that she did not need any additional training to receive a GS-7. (Pl.'s Supp. Mem. at 34.) In trying to bolster her performance, Plaintiff asserts without any citation to the summary judgment record that Cloud "said that she knew all the CAO functions." (Pl.'s Supp. Mem. at 34.) Cloud's assessment of Plaintiff's performance is irrelevant. Plaintiff has provided no evidence that Cloud in any way supervised or evaluated Plaintiff or that he had some expertise in CAO functions. Further, Plaintiff asserts that her "satisfactory" mid-year evaluation and her "fully successful" evaluation for July 1, 2003, to June 20, 2004, show that she should have been promoted. Plaintiff's argument is without merit as Mary Bucolo, a white CAO (Defs.' Summ. J. Ex. 9, Bucolo Decl. ¶¶ 1, 3), also received a performance rating of fully successful and did not receive her GS-7. (Ex. 42, Furtado Dep. 129:8-16; see also Defs.' Summ. J. Ex. 9, Bucolo Decl. ¶ 1.)

**b. Leave Request and Leave Restoration**

Even assuming that Plaintiff did timely contact an EEO counselor with respect to her denial of leave for the dates in August 2003, Plaintiff has failed to show that Blythe's denial of these leave dates was pretext. Although Plaintiff previously asserted that the reason for her denial of leave was because she did not submit an annual leave planner (Ex. 49, Pl. Dep. 210:1-15; Defs.' Summ. J. Ex. 14, Pl. Decl.), she now tries to argue in response to summary judgment that this was not Blythe's true reason for denying her leave. (See Pl.'s Supp. Mem. at 34-35.)

It is important to note in response to Blythe's request to all employees to submit a leave planner, Plaintiff was the only employee who refused to submit a leave planner. (Ex. 46, Blythe Dep. 270:15-18; Defs. Summ. J. Ex. 3 at ¶ 5.) Indeed, the express language of the Master Labor

Agreement, Article 22, Section 2, entitled, “Annual Leave Planners,” “[e]mployees will submit their annual leave plan.” (Defs.’ Summ. J. Ex. 15 at 30.) Every employee, except for Plaintiff, submitted a leave planner. (Ex. 46, Blythe Dep. 270:15-18.)

In response to Defendants’ argument that Plaintiff was denied leave in November 2003 because of McCollum’s scheduled annual leave or days off, Plaintiff concedes that she should not have been able to take leave for these dates if, in fact, McCollum already had these days off. William McCollum’s official leave records reflect that he was not scheduled to work on November 15, 2003, and November 22, 2003. (Defs.’ Summ. J. Ex. 1, DeSantis Decl. ¶ 5.) Further McCollum’s official leave records show that he had scheduled and eventually took annual leave on November 18, 2003. (Defs.’ Summ. J. Ex. 1, DeSantis Decl. ¶ 5.)

In addition, while Plaintiff argues that her leave restoration request was improperly denied, Plaintiff provides no support on how she did in fact meet the criteria to have leave restored. Plaintiff does not dispute that Furtado recommended that her leave be restored. In addition, she does disagree that Blythe decided that the he could not sign off on the form because it did not meet the criteria to have leave restored. (Ex. 46, Blythe Dep. 272:22-273:9.) Rather, in a futile attempt to show pretext, Plaintiff diverts the Court’s attention to inconsistencies with Furtado’s memory as to when he learned that she did not meet the criteria to have leave restored. Even assuming that Furtado’s memory was not correct as to the sequence of events, Plaintiff has failed to show how she did in fact meet the criteria to have leave restored.

**c. Letter of Reprimand**

______Other than Plaintiff’s blanket assertion that a number of white employees engaged in much worse conduct, Plaintiff offers no other evidence of pretext with respect to the letter of

reprimand that she received. (See Pl.'s Supp. Mem. at 36.) Here, Plaintiff does not even attempt to refute her disrespectful conduct or failure to follow instructions. Thus, Plaintiff provides no evidence that Plaintiff was issued a letter of reprimand because of her race.

**IV. Summary Judgment Should Be Granted Because Plaintiff Cannot Establish Retaliation As Alleged in Count III**

Although Plaintiff states that the law for retaliation is essentially the same as for race discrimination, she is mistaken. In order to make out a claim of retaliation under Title VII, Plaintiff must show that: (1) that she engaged in protected conduct; (2) she experienced an adverse employment action; and (3) a causal connection between the protected conduct and the adverse employment action exists. See Gu v. Boston Police Dept., 312 F.3d 6, 14 (1st Cir. 2002).

In Plaintiff's Response to Defendants' Motion for Summary Judgment, Plaintiff does not dispute that she cannot establish a causal connection between the protected conduct and adverse action to make her prima facie case. In fact, Plaintiff has failed to show that there is any evidence connecting her alleged adverse actions to her complaint that she filed with the EEOC on May 7, 2001. "It is insufficient for [Plaintiff] to simply recount that he complained and that [she] was disciplined." King v. Town of Hanover, 116 F.3d 965, 968 (1st Cir. 1997). Further, Plaintiff makes no argument that she can show pretext with respect to her retaliation claim. Accordingly, for the reasons more fully elaborated in Defendants' Corrected Memorandum in Support of their Motion for Summary Judgment, summary judgment should be granted with respect to Plaintiff's retaliation claim.

**V. Summary Judgment Should Be Granted Because Plaintiff Cannot Establish Her Hostile Work Environment Claim As Alleged in Count II**

______Many of the incidents to which Plaintiff alludes as evidencing a hostile work environment should not be considered as they are conclusory allegations with no citations to the record or are dependent upon transcripts which she has not provided the Court. For example, Plaintiff asserts that "[h]er supervisors allude to [sic] the fact that she acted like a gorilla when they describe her as banging on her chest during meetings." (Pl.'s Supp. Mem. at 39.) While Plaintiff fails to provide the relevant deposition transcript cited, Defendants note that Plaintiff has mischaracterized Furtado's testimony. (See Ex. 42, Furtado Dep. 167:2-25.) Furtado never stated that Plaintiff acted "like a gorilla." (See Ex. 42, Furtado Dep. 167:2-25.) All he stated was that she "yelled" and "banged her chest." (See Ex. 42, Furtado Dep. 167:2-25.)

The sole evidentiary support to which Plaintiff cites in support of her claim is Furtado's hour-by-hour instructions on how she should spend her day. However, Plaintiff has failed to show that the alleged harassment was based on her membership in a protected class, that the harassment was so severe or pervasive that it altered the conditions of her employment and created an abusive work environment, or that the objectionable conduct was objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so.

Even if the Court were to consider the alleged incidents referenced on pages 38-39 of Plaintiff's memorandum, Plaintiff cannot meet her burden of showing that these incidents were severe or pervasive or were in any way connected with Plaintiff's race. Indeed, the threshold for plaintiff is high, as "[t]he workplace that is actionable is one that is 'hellish.'" Whittaker v.

Northern Illinois University, 424 F.3d 640, 645 (7th Cir. 2005). Plaintiff's allegations do not meet this test. See also Ford-Fugate v. FedEx Freight, No. 1:04-cv-1514-RLY-TAB, 2007 WL 79104, at *5 (S.D.Ind. Jan. 8, 2007) ("Plaintiffs' allegations that she was excessively monitored, excessively paged at work, given more difficult assignments than her male co-workers, and disciplined more than her male co-workers, do not amount to a working environment that can be characterized as 'hellish.'") (attached as Ex. 48).

______For the reasons stated above and in Defendant's Memorandum Supporting Their Motion For Summary Judgment, Defendants respectfully request the Court grant their Motion for Summary Judgment.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

/s/ Ly T. Nguyen
LY T. NGUYEN
Assistant United States Attorney
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
401-709-5000
401-709-5017 (fax)
Email: ly.nguyen@usdoj.gov

**CERTIFICATION OF SERVICE**

I hereby certify that on this 29th day of February, 2008, I caused to be electronically filed the within Defendants' Reply in Support of Their Motion for Summary Judgment, with the Clerk of the United States District Court for the District of Rhode Island, using the CM/ECF system. The following participant(s), as identified on the Notice of Electronic Filing, has received notice electronically:

Patricia Andrews, Esq.
Louise Herman, Esq.
129 Dyer Street
Providence, RI 02903

/s/ Ly T. Nguyen
LY T. NGUYEN
Assistant United States Attorney
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
(401) 709-5000
(401) 709-5017 (fax)
Email: ly.nguyen@usdoj.gov