UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

Rosezola Sellers :
:
VS. : C.A. NO.: 05-381S
:
United States Department :
Of Defense, et al :

DEPOSITION OF STEVEN FURTADO, a Witness for the above-entitled cause, taken on behalf of the Plaintiff, before Elizabeth Greeley, Notary Public, in and for the State of Rhode Island, at the Law Office of Patricia Andrews, 129 Dyer Street, Providence, Rhode Island, on July 31, 2007, at 10:00 a.m.

PRESENT:

FOR THE PLAINTIFF.......LAW OFFICE OF PATRICIA ANDREWS
BY: PATRICIA ANDREWS, ESQUIRE

FOR THE DEFENDANT.......U.S. DEPARTMENT OF JUSTICE
U.S. ATTORNEY'S OFFICE
BY: LY NGUYEN, ESQUIRE

ALLIED COURT REPORTERS
115 PHENIX AVENUE
CRANSTON, RI 02920
401-946-5500

GOVERNMENT EXHIBIT 42

# I N D E X


| WITNESS | PAGE |
|---|---|
| STEVEN FURTADO | |
| EXAMINATION BY MS. ANDREWS.................... | 4 |


## PLAINTIFF'S EXHIBITS FOR I.D.


| EXHIBIT | DESCRIPTION | PAGE |
|---|---|---|
| 1 | EMPLOYEE LIST (2 PGS)............ | 52 |
| 2 | DISCIPLINARY LIST (1 PG)......... | 52 |
| 3 | REPRIMAND LIST (1 PG)............ | 53 |
| 4 | REPRIMAND LETTER (2 PGS)......... | 70 |
| 5 | JOB DISCRIPTION (4 PGS).......... | 138 |
| 6 | MID-YEAR REVIEW (1 PG)........... | 139 |
| 7 | MEMO (1 PG)...................... | 149 |
| 8A | STATEMENT (2 PGS)................ | 157 |
| 8B | STATEMENT (1 PG)................. | 157 |
| 8C | STATEMENT (3 PGS)................ | 157 |
| 8D | STATEMENT (1 PG)................. | 157 |
| 8E | STATEMENT (1 PG)................. | 157 |
| 9 | MEMO (4 PGS)..................... | 158 |
| 10 | MEMO (2 PGS)..................... | 160 |
| 11 | LETTER (5 PGS)................... | 169 |
| 12 | MEMO (1 PG)...................... | 175 |
| 13 | STATEMENT (2 PGS)................ | 175 |
| 14 | STATEMENT (1 PG)................. | 175 |
| 15 | STATEMENT (2 PGS)................ | 176 |
| 16 | MEMO (1 PG)...................... | 176 |
| 17 | MEMO (1 PG)...................... | 209 |
| 18 | MEDICAL DOCUMENTATION (2 PGS).... | 212 |
| 19 | MEDICAL FAX (3 PGS).............. | 217 |
| 20 | MEMO (8 PGS)..................... | 219 |

# E X H I B I T S


| NO. | DESCRIPTION | PAGE |
|---|---|---|
| 21 | STATEMENT (2 PGS)................ | 226 |
| 22 | MEMO (1 PG)...................... | 230 |
| 23 | MEMO (1 PG)...................... | 233 |
| 24 | MEMO (1 PG)...................... | 233 |
| 25 | MEMO (1 PG)...................... | 233 |
| 26 | LETTER OF CONCERN (2 PGS)........ | 233 |
| 27 | MEMO (1 PG)...................... | 233 |
| 28 | MEMO (1 PG)...................... | 233 |
| 29 | MEMO (1 PG)...................... | 233 |
| 30 | MEMO (1 PG)...................... | 233 |
| 31 | MEMO (1 PG)...................... | 233 |
| 32 | MEMO (1 PG)...................... | 233 |
| 33a | STATEMENT (2 PGS)................ | 243 |
| 33b | MEMO (1 PG)...................... | 243 |
| 34 | FAX (7 PGS)...................... | 247 |
| 35 | DECLARATION (3 PGS).............. | 247 |
| 36 | DECLARATION (3 PGS).............. | 247 |
| 37 | LEAVE RESTORATION REQUEST (1 PG). | 252 |
| 38 | LEAVE APPLICATIONS (6 PGS)....... | 252 |
| 39 | MEMO (1 PG)...................... | 253 |
| 40 | MEMO (1 PG)...................... | 263 |
| 41 | MEMO (2 PGS)..................... | 264 |

Page 87

it is. You know, you don't like it, but that's the way it goes. Billy did most of the talking. Then after that, he walked out.
Q. Did he, during this conversation, state anything specific about why he thought that John Blythe was not a good worker?
A. No. He just said basically that he wouldn't be nothing without me being out on the sales floor, that I was lucky to do the work that I do to help him out. That he would be nothing without my help.
Q. Did John Blythe agree?
A. No, I don't think so.
Q. Do you know what the word disrespectful is?
A. Yes.
Q. Can you define it for me?
A. Disrespectful is when you treat someone not right, you know, when you kind of question somebody's character. That's about it.
Q. Did you consider William McCollum to be disrespectful during this discussion?
A. He was voicing his opinion and his displeasure with John.
Q. My question to you was, did you consider him to be disrespectful?
MS. NGUYEN: Objection, asked and

Page 88

answered.
A. Not really. He was just, he was voicing his opinion of the way the store looked and how John was in his office. He should be out helping out, which, you know, John did at times. He came out on the sales floor. It was more of his opinion that I was doing more.
Q. By complimenting you, he disparaged Mr. Blythe, correct?
A. Yes.
Q. You don't consider that to be disrespectful?
MS. NGUYEN: Objection.
A. It was more of a, like I said, it was more of the store was hurting and he was just voicing his displeasure.
Q. To his supervisor -- well, to the head of the store?
A. Right.
Q. That was not disrespectful?
MS. NGUYEN: Objection, asked and answered several times.
A. He raised his voice.
Q. Well, is raising your voice to the head of the store disrespectful?
A. Yes.

Page 129

Q. She's not a seven?
A. No, ma'am.
Q. William McCollum is what?
A. GS7.
Q. Why did he become a GS7?
A. He completed his training, and that was his next step progression was a seven.
Q. Why didn't Mary Bucolo complete her training?
A. She did, but she did not meet -- and this store director, she was due for a promotion this year. She didn't meet what we wanted her to be at this point. She got a successful on her performance rating. There's still some areas where she needs to work on. Red flags, local promotions that she did not meet the, meet where we wanted her to be so she could move up.
Q. When you say local promotions, what do you mean?
A. Local promotions would be --
Q. Is that releases?
A. Yes. Releases to let the system know that you're having a promotion coming. Local promotions cover like all, they call it DSD deliveries, direct store deliveries. There are some items that you want to put in your local promotions to, like, let the system know you have this item on promotion.

Page 167

I don't know.
Q. Okay. Well, let me put it this way: Why did you decide that 14 days was appropriate?
A. Because it was a culmination of actions for the proposed suspension. She had the right to grieve it.
Q. Sir, let me ask you this: Under disrespectful conduct specifics one, that is your, the meeting that we just talked about, right, down at the bottom on the first page, on October 7, 2004?
A. Yelled and banged, that possibly could be, yes, ma'am.
Q. Well, that's what we just talked about earlier, correct?
A. Possibly could be, yes, ma'am.
Q. Well, can you think of anything else that it could be? Did she bang her chest at any other time in your presence?
A. Yes.
Q. Oh, okay. When else did she bang her chest?
A. I don't know exactly when, but she has banged her chest in conversations before. It's not the first time. I don't know.
Q. You found that inappropriate?
A. Yes, ma'am.

C-E-R-T-I-F-I-C-A-T-E

I, ELIZABETH GREELEY, a Notary Public, do hereby certify that I am expressly approved as a person qualified and authorized to take depositions pursuant to Rules of Civil Procedure of the Superior Court; especially, but without restriction thereto, under Rule 30 of said Rules; that the witness was sworn by me; that the transcript contains a true record of the proceedings.

Reading and signing of the transcript was requested by the deponent upon completion of the deposition.

IN WITNESS WHEREOF, I have hereunto set my hand this 21st day of August , 2007.

________________________________________

ELIZABETH GREELEY, NOTARY PUBLIC
CERTIFIED COURT REPORTER
MY COMMISSION EXPIRES: 04/07/2010