**H**

Hauschulz v. Bourbon County Bd. of Com'rs
D.Kan.,2006.
Only the Westlaw citation is currently available.
United States District Court,D. Kansas.
Travis HAUSCHULZ, Plaintiff,
v.
BOURBON COUNTY BOARD OF COMMISSIONERS, et al., Defendants.
**Civil Action No. 04-3475-KHV.**

June 14, 2006.

Travis Hauschulz, Boise, ID, pro se.
Vaughn Burkholder, Wendell F. Cowan, Jr., Foulston Siefkin LLP, Overland Park, KS, for Defendants.

***MEMORANDUM AND ORDER***

KATHRYN H. VRATIL, District Judge.
***1** Pro se inmate Travis Hauschulz brings suit under 42 U.S.C. § 1983 against the Bourbon County Board of County Commissioners, Howard Colman (sheriff), Darrel Spencer (director of security at the Bourbon County Jail), Heather Lord (nursing staff) and Paul Bollinger (guard at Bourbon County Jail) for violation of his constitutional rights. This matter is before the Court on *Defendants' Motion For Summary Judgment* (Doc. # 44) filed November 18, 2005. For the reasons stated below, the Court overrules in part and sustains in part defendants' motion.

***Legal Standards***

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See*Fed.R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986); *Vitkus v. Beatrice Co.,* 11 F.3d 1535, 1538-39 (10th Cir.1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law."*Anderson,* 477 U.S. at 248. A "genuine" factual dispute requires more than a mere scintilla of evidence. *Id.* at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Hicks v. City of Watonga,* 942 F.2d 737, 743 (10th Cir.1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof."*Applied Genetics Int'l, Inc. v. First Affiliated Secs., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986); *Bacchus Indus., Inc. v.. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir.1991). The nonmoving party may not rest on its pleadings but must set forth specific facts. *Applied Genetics,* 912 F.2d at 1241.

"[W]e must view the record in a light most favorable to the parties opposing the motion for summary judgment."*Deepwater Invs ., Ltd. v. Jackson Hole Ski Corp.,* 938 F.2d 1105, 1110 (10th Cir.1991). Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative. *Anderson,* 477 U.S. at 250-51.

In *pro se* prisoner litigation, the Tenth Circuit endorses the completion and filing of a "Martinez report" where the prison constructs an administrative record which details the factual investigation of the events at issue. *See Martinez v. Aaron,* 570 F.2d 317, 319 (10th Cir.1978). The *Martinez* report is treated like an affidavit, and the Court is not authorized to accept the factual findings of the prison investigation when the plaintiff has presented conflicting evidence. *Green v. Branson,* 108 F.3d 1296, 1302 (10th Cir.1997). The *pro se* prisoner's complaint, when sworn and made under penalty of perjury, is also treated as an affidavit; like the *Martinez* report, it serves as evidence for a summary judgment determination. *See id.*

***2** Plaintiff's opposition brief disputes some of the specific facts in defendants' memorandum and sets forth

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

GOVERNMENT EXHIBIT 5

additional facts in response. Plaintiff does not set forth his additional facts in separately numbered paragraphs and includes them in the same paragraph in which he disputes defendants' facts. *See*D. Kan. Rule 56.1.[FN1]Plaintiff cites defendants' *Martinez* report for some facts but does not cite record support for many others. The Court recognizes that *pro se* litigants should not succumb to summary judgment merely because they fail to comply with the technical requirements involved in defending such a motion. *See Woods v. Roberts,* No. 94-3159, 1995 WL 65457, at *2 (10th Cir. Feb. 17, 1995); *Hass v. U.S. Air Force,* 848 F.Supp. 926, 929 (D.Kan .1994). The Court has therefore searched the record to determine whether genuine issues of material fact preclude the entry of summary judgment for defendants. Where supported by the record, the Court has included plaintiff's additional facts and construed them in the light most favorable to him.

FN1.D. Kan. Rule 56.1 provides as follows:
(b) Opposing Memorandum.
(1) A memorandum in opposition to a motion for summary judgment shall begin with a section that contains a concise statement of material facts as to which the party contends a genuine issue exists. Each fact in dispute shall be numbered by paragraph, shall refer with particularity to those portions of the record upon which the opposing party relies, and, if applicable, shall state the number of movant's fact that is disputed.
(2) If the party opposing summary judgment relies on any facts not in movant's memorandum, that party shall set forth each additional fact in a separately numbered paragraph, supported by references to the record, in the manner required by subsection (a), above. All material facts set forth in this statement of the non-moving party shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the reply.

### *Factual Background*

For purposes of defendants' motion for summary judgment, the following facts are either uncontroverted or, where controverted, construed in the light most favorable to plaintiff: [FN2]

FN2. On January 17, 2006, without leave of court, plaintiff filed *Plaintiff's Reply To Defendants' Reply To Plaintiff's Response To Defendants' Motion For Summary Judgement* (Doc. # 55). Under D. Kan. Rule 7.1(b), parties are permitted file a dispositive motion, a response and a reply. Surreplies are typically not allowed. *See Metzger v. City of Leawood,* 144 F.Supp.2d 1225, 1266 (D.Kan.2001). Surreplies are permitted in rare cases, but not without leave of court. *Humphries v. Williams Natural Gas* Co., Case No. 96-4196-SAC, 1998 WL 982903, at *1 (D.Kan. Sept. 23, 1998). Plaintiff has offered no excuse or justification for filing the surreply without leave. The Court therefore will disregard plaintiff's surreply in analyzing defendants' motion for summary judgment

On October 4, 2002, plaintiff was incarcerated at the Hutchinson Correctional Facility ("H.C.F.") on a case in Sedgwick County, Kansas. A year later, on October 17, 2003, plaintiff was transported to the Southeast Kansas Regional Correctional Center ("S.E.K.R.C.C.") in Fort Scott, Kansas on a detainer issued by Bourbon County, Kansas. Plaintiff remained at S.E.K.R.C.C. until the morning of December 1, 2003, when he returned to the H.C.F. During plaintiff's 44-day stay at S.E.K.R.C.C., he filed 45 grievances and 47 inmate request forms, and received four inmate incident reports. The following chart summarizes plaintiff's relevant grievances and requests:

| Date of Grievance/Request | Substance of Complaints/Requests |
| --- | --- |
| October 18, 2003 | "Need to see dentist about painful [unreadable] Causing a very substantial amount of pain and irritation! Causing dif[f]iculty eating." |

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

| | |
|---|---|
| October 21, 2003 | "I have a severely painful dental situation.... The pain is acting so bad that it's causing problems eating and sleeping." |
| October 28, 2003 | Need to see dentist; will file suit under 42 U.S.C. § 1983 if needed to receive care |
| October 28, 2003 | "Final attempt to exhaust Administrative remedies before filing suit for deliberate indifference to providing proper medical care;" charged $5.00 for visit to nurse |
| October 29, 2003 | Nurse charged $5.00 the previous day and did not provide medical care, prescriptions or referrals; asked to review the Administrative Policy Book |
| October 31, 2003 | Appeal of denial "to provide dental care to a painful medical situation" and for $5.00 charge for visit to nurse / denial of access to law library; charged 25 cents for copies of inmate request form, grievances and appeals |
| November 6, 2003 | Need to see mental health nurse |
| November 6, 2003 | Need to call attorney and Judicial Claims Committee |
| November 6, 2003 | Had not received requested books which were not available in law library |
| November 12, 2003 | Denial of dental and mental health services; in lock-down for not reporting to work |
| November 12, 2003 | Ineffective chain of command pursuant to administrative grievance process |
| November 12, 2003 | Placed in lock-down room without running water |
| November 13, 2003 | Unlawfully housed in lock-down with no running water; unable to wash hands or brush teeth |
| November 13, 2003 | Denial of access to law library; denial of proper and adequate medical care |
| November 13, 2003 | Denial of black pen for drafting legal papers |
| November 13, 2003 | Denial of access to mental health |
| November 19, 2003 | Request confirmation that copies of inmate request forms cost $.25 per page |
| November 20, 2003 | Request copies of repair/replacement costs of damaged property; illegal placement in lockdown and violation of due process right |
| November 21, 2003 | Request copies of all grievances to draft petition to court |
| November 23, 2003 | Denial of due process regarding alleged destruction of property |

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

| | |
|---|---|
| November 23, 2003 | Denial of black pen for drafting legal documents |
| November 24, 2003 | Request copies of all grievances in inmate file |
| November 30, 2003 | Denied opportunity to send legal mail |

*Id.* at 00131.

***Plaintiff's Medical Needs***

*3 Plaintiff had an appointment to have a tooth filled on October 17, 2003, but missed the appointment because he was transported to Fort Scott. That same day, S.E.K.R.C.C. staff conducted a medical screening and noted "bad teeth" on the Inmate Medical Screening form. Plaintiff did not tell staff that he suffered from depression or had any other mental health issues.

On October 18, 2003, plaintiff requested to see a dentist, and someone instructed him to complete a sick call form. On October 20, 2003, Heather Lord, LPN, assessed plaintiff's mental health and stated that plaintiff did not report a history of mental health problems. Lord also completed a medical screening and noted that plaintiff had lost a filling. Specifically, Lord noted as follows:

Inmate c/o wanting to have filling fixed in tooth. Med dept spoke [with] DOS Darrel Spencer about inmates claim of needing filling fixed in tooth. Spoke [with] Spencer about sending inmate to DDS to have determined if tooth needs to be pulled or if tooth just needs another filling. DOS Spencer to talk [with] Jail Admin Alec Beth about possibly sending inmate to have dentist determine what needed to be done. DOS Spencer informed med dept that Beth informed Spencer that if inmate wanted his tooth pulled, inmate could go to dentist. If inmate wanted a new filling, he could not go. Inmate informed by DOS Spencer.

Exhibit 25 to *Martinez* Report (Doc. # 31) at D00130. On the next page, Lord noted as follows:Health hx done on 34 year old male. Appears alert oriented and cooperative [.] Inmate reports lost filling in tooth last wk sometime. Inmate voiced that the tooth was not hurting at current time. Advised inmate to brush teeth frequently and after meals to help keep food out of the lost filling. No current medical problems reported by inmate at this time.

On October 21, 28 and 29 and November 13, 2003, plaintiff filed grievances regarding his need to see a dentist. On October 28, 2003, plaintiff filled out a sick call record and complained that it was his fifth attempt to receive dental care "for a painful dental condition." Someone told plaintiff that the S.E.K.R.C.C. medical department did not fill teeth but only performed emergency extractions. Plaintiff completed inmate requests for mental health care on November 6 and 13, 2003. In response to the November 6 request, S.E.K.R.C.C. replied, "The only way I can make you an appointment with mental health is if it is court ordered. The only other way is if you pay for the mental health visit yourself [and] you have to have money on your books."Exhibit 15 to *Martinez* Report (Doc. # 31) at D00077. To plaintiff's November 13 request, Spencer replied, "You are not denied mental [h]ealth because of being indigent."Exhibit 19 to *Martinez* Report (Doc. # 31) at D00052. On November 12, 2003, in a grievance, plaintiff noted that his tooth caused so much pain that it caused earaches. On November 20, 2003, plaintiff signed consent for S.E.K.R.C.C. to obtain his medical records to determine if he had prior dental and health problems. That same day, S.E.K.R.C.C. requested medical information from H.C.F. On November 26, 2003, H.C.F. responded that plaintiff had no prior dental or mental health issues.

*4 On December 1, 2003, plaintiff returned to H.C.F. On December 3, 2003, plaintiff requested that his tooth be filled. Two days later the dentist filled his tooth. On December 24, 2003, Louise Hendrix, LCP examined plaintiff and noted as follows:

Hauschulz had not filled out sleep packet correctly. He explained he did not know how to do it but wanted to show he wakes up during the night.... When asked about any change in stressors he mentioned last visit he said, "I am pretty much left out of the loop. They just wanted my SS number so I could pay for it."He did not mention his father's illness. He was confronted with fact that

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

there is no documentation in either EMR, hard copy chart or RDU report to varify [sic] past mental health services or prescriptions for Paxil or Seroquil. He said, "That was a long time ago. I didn't think I had to tell them everything."Informed him of fact that medication is not prescribed for sleep complaints. He stood up, threw his sleep packet in the trash and left the office.

Exhibit 1 to *Memorandum In Support Of Defendants' Motion For Summary Judgment* (Doc. # 45).

*Administrative Segregation*

On November 12, 2003, plaintiff refused to participate in inmate cleanup of the jail. In a grievance, plaintiff asserted that he refused to clean because he was ill. Plaintiff placed paper towels over his cell lights and refused to remove them. Jail staff placed plaintiff in administrative segregation. Plaintiff's cell did not have a sink with running water.[FN3]While plaintiff remained in administrative segregation, he had access to showers every three days, milk with breakfast and a cup of water with other meals.[FN4] On November 13, 2003, plaintiff complained that his cell had no running water. On November 14, 2003, plaintiff flooded his cell and the D area by repeatedly flushing the toilet.[FN5]On November 16, 2003, plaintiff covered a deck lamp in his cell with notebook paper and refused to remove it upon request. On November 28, 2003, jail staff removed plaintiff from administrative segregation and placed him back in the general population.

FN3. According to defendants, this particular cell was the only isolation cell with sufficient security features. Plaintiff disagrees, but has cited no supporting evidence.

FN4. Defendants contend that plaintiff received a 22-ounce cup of water with meals and that staff "occasionally" left a pitcher of water in the day room (to which plaintiff had access). Plaintiff's factual allegations have changed several times. For example, in his amended complaint, plaintiff alleged that he received "one cup of water every 24 hours to be used for both drinking and for hygiene purposes."*Amended Complaint* (Doc. # 24) at 31. In plaintiff's response to the summary judgment motion, he does not dispute that he received a cup of water with meals, but contends that it was not a 22-ounce cup but rather "approximately 2/3 the height of a soda pop can."*Memorandum In Support Of Plaintiff's Opposition To Defendant's Motion For Summary Judgment* (Doc. # 48) filed December 5, 2005 at 33, ¶ 41. In a Notice of Claim mailed to the Bourbon County District Court, plaintiff acknowledged that he received a cup of water with his noon and supper meals. *See* Exhibit 41 to *Martinez* Report (Doc. # 31) at 12.

FN5. Plaintiff disputes this fact, stating that he was washing his cell with water from the toilet. Plaintiff does not verify this statement or provide any supporting evidence.

*Access To Courts*

On October 22, 2003, the Bourbon County District Court appointed counsel to represent plaintiff in his criminal case.[FN6]On October 27, 2003, plaintiff requested and received telephone access to his attorney. On October 28, 2003, plaintiff requested Black's Law Dictionary, 2003 K.S.A. Index, and K.S.A. Chapters 22, 60 and 62. Plaintiff received Chapter 22 on October 29, 2003. That same day, plaintiff asked to make an emergency call to family concerning a telephonic conference regarding his legal claims against the State. On October 30, 2003, plaintiff sought the address and telephone number for the Bourbon County Commissioners, which Spencer provided the next day. Throughout the month of November, plaintiff completed 15 additional inmate requests for the following items and/or information: photocopy of a "Notice of Claim;" witnesses/documents regarding a broken cell window; access to secure phone to contact his attorney; eleven specific cases; better response to requests for legal resources; addresses of the American Civil Liberties Union, local paper, news station, Bourbon County Health Department, Federal Courthouse in Topeka, Kansas State Health Department and appellate court in Topeka; access to law library

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

while in administrative segregation; black pen; K.S.A. Chapters 60 and 22; legal envelopes; and information regarding photocopying charges to his account. S.E.K.R.C.C. provided access to legal materials and copies of legal materials from resources which were available to them.

FN6. Plaintiff's criminal case in Bourbon County involved the issuance of worthless checks. *See* Disposition Of Detainer in Case No. 02CR266, Exhibit 1 to *Martinez* Report (Doc. # 31).

***5** On November 17, 2003, plaintiff wrote a letter addressed to "Judge Heart" which stated as follows:

I am terribly sorry for such an inconvienance [sic] but could you have the clerk make a copy of all the enclosed motions and documents. Darrel Spencer, the jails Director of Security refused to make me photo copies of the enclosed materials after he took them from me, November 14th, read the materials and brought it back on the 17th and said he would "*not* " mail or "*copy* " these motions. His reason was "because I have no money on my inmate account."I know I need not tell you, of all people, what kind of violation that is, but I will file on that at a later date.... I'm not sure yet how I'm even going to get these documents to you? I hate to create such a serious violation, but there are a couple of inmates who leave the jail for various programs. I may have to have this package smuggled out just to get it to you? I will, however, try a midnight shift officer to see if I can play dumb and get him to slip this into the outgoing mail? So please, could you have the clerk send a stamp file copy back right away so I know you at least got this package. This is really stressing me out that I may not be able to get my legal documents to the court for fear that Darrel Spencer will again intercept this package. Especially since he knows to look for it now.

Exhibit 73 to *Martinez* Report (Doc. # 31). On November 20, 2003, in the Bourbon County, Kansas, District Court, plaintiff filed motions in two cases, 03-CV-201 and 03-CV-202. In Case 03-CV-201, plaintiff filed (1) a motion for immediate release based on S.E.K.R.C.C.'s refusal to provide dental care, (2) a motion for procurement of documents and (3) a motion for oral argument so that the court could see his swollen cheek and the hole in his tooth. The docket sheet reflects that the Bourbon County Court sent a copy of those pleadings to the Bourbon County Sheriff. In Case 03-CV-202, plaintiff filed a writ of habeas corpus pursuant to K.S.A. § 60-1501, alleging that he had received more severe punishment for rule violations than stated in "Inmate Insodent [sic] Reports" and that jail administrators did not follow proper due process policy on disciplinary hearings. Defendants claim that on November 23, 2004, plaintiff mailed a notice of claim to the Bourbon County Board of County Commissioners under K.S.A. § 12-105(b) and filed motions for orders for dental care and medical care in the Bourbon County court. The cited documents do not show a file stamp, however, and the motions do not appear on the Bourbon County docket sheet.[FN7]Giving plaintiff the benefit of all favorable inferences, it appears that the motions were not actually filed.

FN7. The unfiled motions allege that the jail denied plaintiff necessary dental care and access to medical care, which arose from lack of water for drinking and hygiene. These motions seek relief based on the same claims which plaintiff set forth in the motion for an injunction filed in Bourbon County, Kansas on November 20, 2003.

On November 24, 2003, in both civil cases, plaintiff filed a letter with the Bourbon County court.[FN8]On December 1, 2003, in Case No. 03-CV-201, plaintiff filed a motion for injunction which alleged that Bourbon County and its employees, specifically Darrel Spencer, denied him envelopes and postage for legal mail. That same day, plaintiff also filed a letter which asserted that he had not received a copy of his letter to the judge dated November 19, 2003 or a copy of his cover letter with a previous package. The docket sheet reflects that on February 4, 2004, plaintiff filed a motion for a telephonic hearing in Case No. 03-CV-201.On February 13, 2004, Judge Gerald W. Hart found that the issues in both of plaintiff's civil cases were moot, and he dismissed both cases.

FN8. The docket sheet reflects that plaintiff

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

filed pleadings on November 24, 2003, but it does not provide specifics as to which pleadings were filed that day.

*6 On December 15, 2004, plaintiff filed this suit. Plaintiff asserts four theories of relief: (1) defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by denying adequate medical and mental health care (Count I); (2) defendants violated the Due Process Clause of the Fifth and Fourteenth Amendments by placing him in administrative segregation for 16 days without opportunity to prove he had not violated policy or rules (Count II); (3) defendants violated his Eighth Amendment rights by placing him in administrative segregation for "weeks at a time" in a cell without running water (Count III); and (4) defendants violated his First Amendment rights by denying access to the courts. *See Amended Complaint* (Doc. # 24). Defendants argue that they are entitled to summary judgment on all claims because (1) plaintiff cannot show that he had a serious medical need; (2) plaintiff did not have a liberty interest in accessing the day room, visiting other cells, watching television or using the telephone; (3) plaintiff's conditions of confinement did not result in a serious health risk; and (4) plaintiff does not have standing to claim denial of access to courts because he cannot show that he suffered actual injury as a result of their conduct.

### *Analysis*

### I. Cruel And Unusual Punishment: Denial Of Medical Care (Count I)

Plaintiff alleges that by denying dental and mental health care, defendants subjected him to cruel and unusual punishment. Defendants argue that they are entitled to summary judgment on this claim because plaintiff cannot show that he had a serious medical need.

The Constitution does not permit inhumane prisons, but neither does it mandate comfortable ones. To establish an Eighth Amendment violation, plaintiff must show that prison officials have shown "deliberate indifference" to serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 104 (1976). "Deliberate indifference" includes both an objective and a subjective component. *Sealock v. Colorado,* 218 F.3d 1205, 1209 (10th Cir.2000). The objective component is met if the deprivation is "sufficiently serious." *Id.* (citing *Farmer v. Brennan,* 511 U.S. 825 (1994)). The subjective component is met if a prison official "knows of and disregards an excessive risk to inmate health or safety."*Id.*

A medical need is "serious" if it has been diagnosed by a physician as one requiring treatment or if it is so obvious that even a lay person would easily recognize the need for a doctor's attention. *See Sealock,* 218 F.3d at 1209;*Ramos v. Lamm,* 639 F.2d 559, 575 (10th Cir.1980). Indications that a prisoner has a "serious" need for medical treatment include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's *daily* activities; and the existence of chronic and substantial pain. *Riddle v. Mondragon,* 83 F.3d 1197, 1202 (10th Cir.1996) (citing *McGuckin v.. Smith,* 974 F.2d 1050, 1059-60 (9th Cir.1992)). A delay in medical care is an Eighth Amendment violation when plaintiff can show that it resulted in substantial harm, *Oxendine v. Kaplan,* 241 F.3 d 1272, 1276 (10th Cir.2001), such as lifelong handicap, permanent loss or considerable pain, *Garrett v. Stratman,* 254 F.3d 946, 950 (10th Cir.2001).

*7 Without legal citation, defendants argue that as a matter of law, a lost filling is not a serious medical need and that plaintiff has not shown harm resulting from a delay in dental care. Defendants point to a lack of evidence that plaintiff's tooth was abscessed or infected and note that plaintiff's suffering apparently ended by October 21, 2003, because (1) plaintiff ceased complaining about pain, or merely added complaints about pain as an afterthought to other complaints; and (2) he did not ask to see a dentist until two days after he returned to H.C.F. and even then he did not claim to be in pain.

The law does not require that an inmate's tooth be abscessed or infected before a lost filling can be considered a serious medical condition. Pain can be considered

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

substantial harm resulting from delay. *See Sealock,* 218 F.3d at 1205. Courts have precluded summary judgment in cases where an inmate experienced pain during delay in receiving dental care. *See Stack v. McCotter,* 79 F. App'x 383, 389 (10th Cir.2003) (seven-month delay between initial complaint and treatment created issue whether plaintiff met "sufficiently serious" criteria); *Boyd v. Knox,* 47 F.3d 966 (8th Cir.1995) (three-week delay in dental care for impacted/infected wisdom tooth can support finding of Eighth Amendment violation); *Archer v. Florence,* No. CIV-01-1856-L, 2005 WL 3336512 (W.D.Okla. Dec. 7, 2005) (six-month delay in treating cavity when plaintiff suffered severe pain raised genuine issue of material fact). Defendants' argument that plaintiff ceased complaining of pain ignores record evidence. Shortly after plaintiff arrived at S.E.K.R.C.C., Lord noted that plaintiff told her about his lost filing but reported that he was not in pain. On October 18 and 21, 2003, however, plaintiff complained of dental pain which caused difficulty eating and sleeping. On October 31, 2003, plaintiff appealed the denial "to provide dental care to a painful medical situation."On November 23, 2003, plaintiff drafted a "motion for order for dental care" which defendants apparently kept in their records rather than mailing to the Bourbon County court. The motion states that "[t]he past 3 weeks the pain has become unbarrable! [sic] Often times it's been so bad, it's caused many ear aches."Exhibit 23 to *Martinez* Report (Doc. # 31) at D00023. On October 18, 2003, plaintiff first notified defendants that his dental condition was painful. He received treatment on December 3, 2003. Given plaintiff's repeated complaints of pain, the six-week delay creates a genuine issue of material fact whether defendants violated the Eighth Amendment by delaying dental treatment for plaintiff.

To prevail at trial, plaintiff must also demonstrate the subjective component-that defendants knew of and disregarded an excessive risk to his health or safety. *Sealock,* 218 F.3d at 1209. Defendants have not asserted any argument under this prong. For purposes of this motion, the Court presumes that defendants concede this point. Defendants' motion for summary judgment on this claim is therefore overruled.

**II. Violation Of Due Process (Count II)**

***8** Plaintiff claims that by placing him in segregation without following due process procedures set forth in the S.E.K.R.C.C. administrative manual, defendants violated (1) his due process liberty interest and (2) his right to procedural due process. Plaintiff alleges that he had a right to be with the general jail population and suffered a major disruption in his environment because he could not (1) access the day room 24 hours a day, (2) move from cell to cell, (3) go to the commissary or TV room, (4) access the telephone or (5) take meals with female inmates.

A decision by a prison official to place an inmate in administrative segregation does not implicate the Due Process Clause of the Fourteenth Amendment unless the confinement presents "the type of atypical, significant deprivation in which a State might conceivably create a liberty interest."*Sandin v. Connor,* 515 U .S. 472, 485 (1995).*Sandin* focuses the inquiry not on the language in the prison regulations, but on the nature or type of deprivation alleged. Under *Sandin,* a due process interest may be implicated if a deprivation "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."*Id.* at 484.In *Sandin,* the Court found that administrative segregation was within the range of confinement to be normally expected and that segregated confinement did not constitute the kind of hardship giving rise to a protected liberty interest in remaining in the general population. *Id.* at 485;*see Talley v. Hesse,* 91 F.3d 1411, 1413 (10th Cir.1996). On numerous occasions, this Court has found that Kansas prison regulations do not create a protected liberty interest. *See Rush v. McKune,* 888 F.Supp. 123, 125 (D.Kan.1995); *Lloyd v. Suttle,* 859 F.Supp. 1408, 1410 (D.Kan.1994).

Here, plaintiff does not allege a deprivation of liberty which is atypical or substantial, or a liberty interest which is otherwise protected by Kansas law. As a matter of law, plaintiff's placement in administrative segregation does not give rise to a viable claim under 42 U.S.C. § 1983. Furthermore, because placement in administrative segregation does not give rise to a liberty interest, defendants' procedures need not comply with

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

procedural due process.*Talley,* 91 F.3d at 1413. The Court therefore sustains defendants' motion on this claim.

**III. Cruel And Unusual Punishment: Administrative Segregation (Count III)**

Plaintiff claims that defendants violated his Eighth Amendment rights by housing him in administrative segregation for two weeks with no running water and permitting him one cup of water for drinking and hygiene every 24 hours. In his complaint, plaintiff alleges that due to these conditions, he had trouble urinating, suffered from constipation and experienced drastic rises in body temperature. According to the complaint, plaintiff requires increased doses of psychotropic and antidepressant medications and requires counseling as a result of the trauma which he experienced during the two-week period. Defendants argue that they are entitled to summary judgment on this claim because plaintiff has provided no evidence (1) that during his administrative segregation, prison conditions subjected him to a serious health risk or (2) that he experienced health problems from the conditions of administrative segregation. Plaintiff responds that deprivation of drinking water and water for proper hygiene is a serious deprivation of a human need.

***9** To determine whether defendants violated plaintiff's Eighth Amendment rights, the Court considers both an objective and subjective component.*Farmer,* 511 U.S. at 834. Plaintiff must show that (1) the condition complained of is "sufficiently serious" and (2) prison officials acted with "deliberate indifference" to inmate health or safety. *Id.* (quotation omitted); *Reynolds v. Powell,* 370 F.3d 1028, 1031 (10th Cir.2004). A sufficiently serious deprivation exposes an inmate to "a substantial risk of serious harm."*Id.* Jail conditions may be restrictive and harsh without violating constitutional rights. *Barney v. Pulsipher,* 143 F.3d 1299, 1311 (10th Cir.1998). Prison officials must provide "humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety."*Craig v. Eberly,* 164 F.3d 490, 495 (10th Cir.1998) (quoting *Barney,* 143 F.3d at 1310).

In *Ramos v. Lamm,* 639 F.2d 559 (10th Cir.1980), the Tenth Circuit stated that prison must provide inmate living space with "reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities (i.e., hot and cold water, light, heat, plumbing)."*Id.* at 568.An inquiry into conditions of confinement relies on the particular facts of each situation; the "circumstances, nature, and duration" of the challenged conditions must be carefully considered. *DeSpain v. Uphoff,* 264 F.3d 965, 974 (10th Cir.2001) (quoting *Johnson v. Lewis,* 217 F. 3 d 726, 731 (9th Cir.2000)). Substantial deprivations of shelter, food, drinking water and sanitation may constitute an Eighth Amendment violation even if the duration is short. *Id.*

In *Mitchell v. Maynard,* 80 F.3d 1433 (10th Cir.1996), the Tenth Circuit affirmed a jury verdict that prison conditions violated an inmate's Eighth Amendment rights when prison guards stripped the inmate and placed him in an unheated concrete cell without a mattress or bedding while outside temperatures remained in the mid-50s. In addition, prison staff removed plaintiff's prescription glasses, provided inadequate ventilation and denied him hot water, toilet paper, writing utensils and exercise.[FN9]*Id.* In *Craig v. Eberly,* 164 F.3d 490 (10th Cir.1998), the Tenth Circuit found a genuine issue of material fact when a pretrial detainee alleged that over a two-and-a-half month period the sink in his cell was frequently clogged and basic hygiene was prevented. In *Barney v. Pulsipher,* 143 F.3d 1299, 1312 (10th Cir.1998), the Tenth Circuit found as a matter of law that inmates' 11-day stay in filthy cell with inadequate lighting and ventilation, lack of enclosures around shower and toilet, unappetizing food and lack of access to recreational facilities was not unconstitutional. *See also Narducci v. Fields,* 62 F.3d 1428 (10th Cir.1995) (lack of light and running water, poor ventilation and placement in individual cage for outdoor exercise not constitutional violation); *Jelinek v. Roth,* 33 F.3d 56, 1994 WL 447266 (7th Cir. Aug. 19, 1994) (Constitution does not require running water in cell).

FN9. The Tenth Circuit acknowledged conflict-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

ing testimony about the duration of the deprivations and concluded that the jury should weigh the credibility of the witnesses. The inmate alleged that some of the deprivations lasted more than five and one half months.

***10** Here, plaintiff remained in administrative segregation for 16 days. During that time, the sink in his cell did not have running water for drinking, washing or brushing his teeth.[FN10]Defendants gave plaintiff milk for breakfast and a cup of water which was "approximately 2/3 the height of a soda pop can" with lunch and supper meals. Plaintiff had access to a shower once every three days. The lack of *daily* shower access and running water to brush teeth and wash hands over a 16-day period, however, do not rise to the level of a constitutional violation.

FN10. Plaintiff apparently had a working toilet in his cell.

Likewise, plaintiff's allegation that he received inadequate drinking water does not amount to a constitutional violation. Plaintiff cites no evidence that the liquid which defendants provided constituted a substantial deprivation of basic necessities. Furthermore, he cites no record evidence that he suffered physical difficulties because of insufficient liquids, or requested medical care for such conditions.

Defendants do not address the deliberate indifference prong, but the Court need not reach this issue. Defendants' motion for summary judgment is granted on this claim.

**IV. Access To The Courts (Count IV)**

Plaintiff claims that defendants denied him access to the courts. Specifically, plaintiff alleges that defendants denied him access to the Bourbon County District Court, a law library, photocopies of grievances and legal pleadings, and-by refusing postage-the United States Postal System. Plaintiff alleges that he was "prejudiced and suffered the permanent loss of his legal action to seek order from the Court to obtain seriously needed emergency medical care."*Amended Complaint* (Doc. # 24) at 35.

Defendants assert that plaintiff does not have standing to seek relief because he cannot show actual injury which hindered or prejudiced him in pursuing litigation. To show that defendants violated his constitutional right to access the courts, plaintiff must show actual injury-harm which arises when a claim is lost or rejected on account of defendants' misconduct or when defendants impede plaintiff's efforts to pursue a claim. *See Lewis v. Casey,* 518 U.S. 343, 351 (1996); *Simkins v. Bruce,* 406 F.3d 1239, 1244 (10th Cir.2005); *Penrod v. Zavaras,* 94 F.3d 1399, 1403 (10th Cir.1996) (plaintiff must show that defendants hindered his efforts to pursue nonfrivolous legal claim). Prejudice occurs when defendants' interference with plaintiff's legal mail is directly and inextricably tied to the adverse disposition of his underlying case or loss of his right to appeal from that disposition. *Simkins,* 406 F.3d at 1244. Plaintiff may also show that he suffered "arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint."*Purkey v. Green,* 28 Fed. App'x 736, 742 (10th Cir.2001) (quoting *Lewis,* 518 U.S. at 351)).

Plaintiff contends that he could not petition the Bourbon County court "to obtain seriously needed emergency medical care."Defendants assert that they "constantly" obtained copies of legal resources for plaintiff and that the Bourbon County court even appointed counsel for him. Defendants, however, ignore the fact that the court appointed counsel in plaintiff's criminal case, not in his civil cases.

***11** The record reflects that while incarcerated at S.E.K.R.C.C., plaintiff filed numerous documents with the Bourbon County district court in his civil cases, including the following: Writ Of Habeas Corpus Pursuant To K.S.A. 60-1501, Motion For Oral Argument, Motion Requesting Immediate Injunction-K.S.A. 60-90, Motion For Procurment [sic] Of Documents, all filed November 20, 2003, and Motion For Injunction filed December 1, 2003. Plaintiff alleges that he had to smuggle these documents out of S.E.K.R.C.C. to be filed, but he does not verify his factual allegations and provides no affidavits to support them.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Defendants provide copies of motions which they claim plaintiff filed in the Bourbon County court on November 23, 2004 (motions for orders for dental care and medical care). These documents do not show a file stamp, however, and they do not appear on the Bourbon County court docket sheet. The unfiled motions, however, merely re-assert the claims which plaintiff stated in his motion for immediate injunction in Case No. 03-CV-201, filed November 20, 2003. The Bourbon County court dismissed these claims as moot on February 13, 2004, because they requested medical and dental care at S.E.K.R.C.C. and plaintiff had been transferred back to H.C.F. on December 1, 2003. Plaintiff's burden to show that his claim was lost or rejected or that defendants' actions impeded his claim is not high, but he has not shown that the dismissal was in any way tied to defendants' refusal to mail his motions. Similarly, plaintiff has not shown that the unfiled pleadings were anything but cumulative in his case. Defendants are therefore entitled to summary judgment on plaintiff's claim that defendants interfered with plaintiff's ability to file motions for orders for medical and dental care at S.E.K.R.C.C.

Plaintiff also alleges that defendants interfered with his access to the courts by failing to provide copies of grievances, postage and adequate access to legal materials. In his second amended complaint, plaintiff alleges that "[t]o petition the Court [he] needed access to a law library so to draft his request for an order for medical care to comply with the laws and proceedures [sic] of the court. He was denied access to the law library as well as to legal materials."Doc. # 12 at 17-18. Plaintiff also complains that jail officials denied him copies of (1) the denial of medical care (which he needed to show exhaustion), and (2) documents to the court. Again, plaintiff had already presented his legal claims for S.E.K.R.C.C.'s alleged denial of medical care (and failure to give due process) to the Bourbon County court. From the record, the Court cannot ascertain what legal materials plaintiff did not receive or how the denial of access to the law library or other materials influenced his case. As previously noted, the Bourbon County court dismissed plaintiff's case as moot. Plaintiff has not shown that because of defendants' misconduct, he could not file or maintain his claims. Defendants are entitled to summary judgment on this claim.

***12 IT IS THEREFORE ORDERED** that *Defendants' Motion For Summary Judgment* (Doc. # 44) filed November 18, 2005 be and hereby is **OVERRULED in part and SUSTAINED in part.**The Court overrules defendants' motion on plaintiff's claim that defendants violated his Eighth Amendment rights by denying him dental care (Count I). The Court sustains defendants' motion on plaintiff's claims that defendants violated his due process rights (Count II); violated his Eighth Amendment right by placing him in administrative segregation without adequate access to running water for drinking and hygiene (Count III); and denied him access to the courts (Count IV).

D.Kan.,2006.
Hauschulz v. Bourbon County Bd. of Com'rs
Slip Copy, 2006 WL 1675907 (D.Kan.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.