UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| ROSEZOLA SELLERS, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 05-381 S |
| | ) | |
| UNITED STATES DEPARTMENT | ) | |
| OF DEFENSE and ROBERT M. | ) | |
| GATES, SECRETARY OF THE | ) | |
| DEPARTMENT OF DEFENSE, | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

WILLIAM E. SMITH, United States District Judge.

Before the Court is Plaintiff's Appeal of Magistrate Judge Martin's January 29, 2009 Report and Recommendation ("R&R") urging this Court to grant Defendants' Motion for Summary Judgment. Plaintiff objects only to the Magistrate Judge's conclusions regarding the narrow issue of comparative evidence. For the reasons set forth below, Plaintiff's objection is denied and the R&R is adopted in full.

I.  Standards of Review

In considering Plaintiff's objection, this Court must conduct "a de novo determination of those portions of the [R&R] to which objection is made" and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); see also Fed. R. Civ. P. 72(b)(3); Hartford Ins. Co. v. Gen. Elec. Co., 526 F. Supp. 2d 250, 251 (D.R.I. 2007).

Summary judgment is appropriate only if, viewing all factual disputes in the light most favorable to the nonmoving party, there is no genuine issue of material fact that would prevent judgment for the moving party as a matter of law. <u>Meuser v. Federal Express Corp.</u>, 564 F.3d 507, 515 (1st Cir. 2009); <u>see</u> <u>also</u> Fed. R. Civ. P. 56(c). "Genuine issues of material fact are not the stuff of an opposing party's dreams. On issues where the nonmovant bears the ultimate burden of proof, he must present definite, competent evidence to rebut the motion." <u>Mesnick v. Gen. Elec. Co.</u>, 950 F.2d 816, 822 (1st Cir. 1991); <u>see</u> <u>also</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986). Although the Plaintiff in this case has the benefit of all reasonable inferences, judgment as a matter of law for the Defendants is appropriate "[e]ven in employment discrimination cases where elusive concepts such as motive or intent are at issue . . . if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." <u>Feliciano de la Cruz v. El Conquistador Resort & Country Club</u>, 218 F.3d 1, 5 (1st Cir. 2000) (quoting <u>Medina-Munoz v. R.J. Reynolds Tobacco Co.</u>, 896 F.2d 5, 8 (1st Cir. 1990) (internal quotation marks omitted)); <u>see</u> <u>Bonilla v. Electrolizing, Inc.</u>, 607 F. Supp. 2d 307, 314 (D.R.I. 2009).

II.   Facts & Travel

Magistrate Judge Martin's R&R contains a detailed and thorough recitation of the facts, which need not be repeated here.   The Court briefly relates those facts relevant to this appeal.[1]

Plaintiff, an African American woman, began working at the Newport Naval Commissary in Newport, Rhode Island in 1988 and was promoted to store worker in 1997.   Her direct supervisor was grocery manager Mary Gibson ("Gibson").   In the Commissary's managerial hierarchy, Gibson reported to store administrator Steven J. Furtado ("Furtado"), and he in turn reported to store director John T. Blythe ("Blythe").   In 2003, Furtado and Blythe promoted Plaintiff to Commissary Management Specialist trainee.

On December 5, 2003, Plaintiff was stocking shelves when Gibson instructed her to go to the "chill" area to stock.   The "chill" area held boxes of cold products such as cheese, butter, milk, and eggs.   Plaintiff refused, claiming both an injury to her hand and a lack of appropriate clothing, although Gibson informed her that jackets were available for that purpose.   After consulting with Blythe about the incident, Gibson indicated to Plaintiff that there was nothing in her personnel file documenting any current restrictions and again directed her to stock the "chill" area. Plaintiff   loudly   refused   this   second   instruction;   Gibson

---

[1] See R&R at Section II for additional facts and background.

3

subsequently stocked the chill area herself.  On February 25, 2004, Gibson issued a letter of reprimand to Plaintiff for failure to follow instructions and disrespectful conduct.

In April 2004, Plaintiff filed an EEO complaint alleging several incidents of racial discrimination, including Gibson's letter of reprimand.   The agency found no discrimination or retaliation.[2]  On September 2, 2005, Plaintiff filed her complaint with this Court, and on January 31, 2008, Defendants' Motion for Summary Judgment was referred to Magistrate Judge Martin for preliminary review, findings, and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B).  Magistrate Judge Martin granted the motion in Defendants' favor on each of Plaintiff's claims of disparate treatment, hostile work environment and retaliation. (See R&R at 76-79.)   On March 9, 2009, Plaintiff filed a limited objection to the R&R, claiming the Magistrate Judge erred in his consideration of the comparative evidence she offered regarding the letter of reprimand to establish discrimination based on race.

III. Discussion

In opposing summary judgment, Plaintiff relied on a cavalcade of comparative evidence allegedly demonstrating that Gibson,

---

[2] Plaintiff's claim that she was terminated as a result of unlawful discrimination and retaliation is part of a separate action now pending before this Court.  See (Opinion and Order (Doc. #45) (denying appeal of Magistrate Judge's Memorandum and Order denying Plaintiff's motions to Amend and Compel (Doc. #28))); See also Sellers v. United States Dep't of Defense, CA 07-418S, Comp. ¶ 14.

Furtado, and Blythe disciplined similarly situated white employees that engaged in more egregious misconduct less severely than Plaintiff or not at all.  (Pl.'s Mem. 17-30.)  Since the only remaining discipline issue before Magistrate Judge Martin was Gibson's letter of reprimand to Plaintiff, he concluded that incidents which did not involve the imposition or withholding of discipline by Gibson were not comparable.  (R&R at 52.)  The Magistrate Judge reasoned that employees disciplined by different supervisors were not similarly situated in all material respects, absent evidence of a company-wide discipline policy or coordination.  (R&R at 52-53.)  In short, he found Plaintiff was comparing apples to oranges in an unsuccessful attempt to conjure up a speck of pretext behind Gibson's letter.

Citing a laundry list of cases, Plaintiff argues in her objection that this conclusion is erroneous because "the law makes clear that employees do not have to report to the same supervisor in order to be similarly situated."  (Pl.'s Obj. 2.)  Plaintiff also raises a new argument in her objection that she offered evidence demonstrating that Gibson could not have disciplined Plaintiff without consultation, input, and approval from Furtado and Blythe; thus, she contends, the purported comparators were indeed similarly situated.[3]  In response, Defendants urge this

---

[3] Plaintiff acknowledges she did not advance this "Gibson did not act alone" argument to the Magistrate Judge with respect to the issuance of the letter of reprimand; (Hr'g Tr. 3:14-20, May 12,

Court to adopt the R&R in its entirety. They contend the Magistrate Judge's findings on comparative evidence are consistent with the decisions of numerous courts, and that in any event the additional alleged comparators are not similarly situated to Plaintiff. (Def.'s Resp. 2.)

Based on its de novo review, this Court concludes that Magistrate Judge Martin correctly found that the comparative evidence Plaintiff offered involving different supervisors was not comparable. See Rodriguez-Cuervos v. Wal-Mart Stores, Inc., 181 F.3d 15, 21 (1st Cir. 1999); Dartmouth Review v. Dartmouth Coll., 889 F.2d 13, 19 (1st Cir. 1989), overruled on other grounds by Educadores Puertorriquenos en Accion v. Hernandez, 367 F.3d 61, 64 (1st Cir. 2004). Furthermore, assuming for purposes of argument that the Magistrate Judge erred, Defendants are nonetheless entitled to summary judgment because even with these so-called additional comparators, Plaintiff lacks sufficient evidence of pretext with respect to race to overcome the undisputed, legitimate disciplinary rationale behind Gibson's letter of reprimand. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973); Shorette v. Rite Aid of Maine, Inc., 155 F.3d 8, 13 (1st Cir. 1998).

---

2009); and therefore the argument is waived. See Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 990-91 (1st Cir. 1998); Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987); Fireman's Ins. Co. v. Todesca Equip. Co., 310 F.3d 32, 38 (1st Cir. 2002).

It is fundamental that "[a] claim of disparate treatment based on comparative evidence must rest on proof that the proposed analogue is similarly situated in all material respects." Rodriguez-Cuervos, 181 F.3d at 21 (quoting Perkins v. Brigham & Women's Hosp., 78 F.3d 747, 751 (1st Cir. 1996)). Plaintiff must demonstrate that the circumstances of the incidents involving Furtado, Blythe, and the other Commissary employees were reasonably comparable to those surrounding the letter of reprimand Gibson issued to Plaintiff. See Dartmouth, 889 F.2d at 19. The test is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated. Id. The comparators need not be exact replicas, but should be "fair congeners . . . [i]n other words, apples should be compared to apples." Id. at 21.

While there is no exhaustive list of relevant factors, in general terms a plaintiff must show purported comparators "have dealt with the same supervisor, been subject to the same standards and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or [their employers'] treatment of them for it." Walker v. Ohio Dep't of Rehab. & Corr., 241 Fed. Appx. 261, 266 (6th Cir. 2007) (internal citation and quotation omitted); see also Rodriques-Cuervos, 181 F.3d at 21 (adopting nearly identical language and citing Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir.

1992)).  Employees are generally not similarly situated if they are subject to the decisions of different supervisors.  <u>See</u>, <u>e.g.</u>, <u>Fields v. Shelter Mut. Ins. Co.</u>, 520 F.3d 859, 864 (8th Cir. 2008) ("[W]hen different decision-makers are involved, two decisions are rarely similarly situated in all relevant aspects.") (quoting <u>Stanback v. Best Diversified Prods., Inc.</u>, 180 F.3d 903, 910 (8th Cir. 1999)); <u>Radue v. Kimberley-Clark Corp.</u>, 219 F.3d 612, 618 (7th Cir. 2000) ("[D]ifferent employment decisions, concerning different employees, made by different supervisors, are seldom sufficiently comparable.").

In <u>Rodrigues-Cuervos</u>, the First Circuit affirmed summary judgment for the defendant where evaluations completed by different supervisors, at different times, and in different stores did not yield evidence of discrimination.  181 F.3d at 21.  This holding echos the sound reasoning that "[d]ifferent supervisors will inevitably react differently to employee insubordination." <u>Metzler v. Federal Home Loan Bank of Topeka</u>, 464 F.3d 1164, 1175 (10th Cir. 2006) (internal citation and quotation omitted).  Here, Plaintiff seeks to compare Gibson's letter of reprimand to a hodgepodge of different disciplinary actions meted out by different supervisors at different times.  Thus, as in <u>Rodrigues-Cuervos</u>, the Magistrate Judge properly concluded that employees disciplined by Furtado and Blythe were not comparable.  <u>See</u> 181 F.3d at 21; <u>see also</u> <u>Franklin v. City of Evanston</u>, 384 F.3d 838, 847-48 (7th Cir. 2004)

(affirming summary judgment for defendant where alleged comparator was disciplined by different supervisor who determined the level of discipline).

Plaintiff is correct that the existence of different supervisors is not per se dispositive in a comparative evidence/pretext analysis. But the facts here are distinguishable from cases where courts have found comparable evidence involving different supervisors. See Petsch-Schmid v. Boston Edison Co., 914 F. Supp. 697 (D. Mass. 1996); Bratton v. CSX Transp., Inc., 586 F. Supp. 2d 12 (D. Mass. 2008). For example, the Court in Petsch-Schmid rejected the necessity of the "same supervisor" criterion where the defendant introduced evidence of company-wide policies intended to provide guidance to all supervisors. See 914 F. Supp. at 705 n.17. Here, Plaintiff adduced no evidence of such policies before the Magistrate Judge, and unsupported speculation or allegation that supervisors at the Commissary somehow acted in concert is plainly insufficient to survive summary judgment. See Bratton, 586 F. Supp. 2d at 20 (rejecting application of the same supervisor criterion only where disciplinary actions reflected company-wide policies and the specific supervisor was not particularly relevant to the inquiry). In sum, Plaintiff offers no basis on which the Court could, in essence, ignore or overlook the fact that the additional incidents to which Plaintiff points involve Furtado and Blythe but not Gibson.

Supposing, nevertheless, that the Magistrate Judge erred in his consideration -- or lack thereof -- of Plaintiff's "non-Gibson" comparative evidence, Defendants are still entitled to summary judgment on Plaintiff's disparate treatment claim.  The letter of reprimand was issued for failure to follow instructions and disrespectful conduct.  (Def.'s App., Ex. 1b at D-0194.)  There is no question this is a legitimate and non-discriminatory rationale.  Therefore, the burden shifts to Plaintiff to show that Gibson's stated reason was pretextual.  See McDonnell Douglas, 411 U.S. at 802.  Plaintiff must prove not only that Gibson's articulated reason was a sham, but also that her true reason was fueled by Plaintiff's race.  See Rodrigues-Cuervos, 181 F.3d at 19 (citing Shorette, 155 F.3d at 13).

Plaintiff admits she refused to comply with Gibson's request that she stock the chill area, and it is undisputed that there was at least one jacket available for that purpose.  (Def.'s SUF ¶ 55; R&R at 63.)  Additionally, the evidence indicates Gibson honestly believed Plaintiff was under no medical restrictions based upon the information in her personnel file.  (Def.'s SUF ¶ 67; Gibson Dep. 74:24-75:3, July 25, 2007.)  This belief is bolstered by the fact that Plaintiff was stocking another part of the store at the time the request was made.  (Def.'s SUF ¶ 64.)  Plaintiff provided no documentation showing otherwise.  (Gibson Decl. ¶ 8, Nov. 30, 2007.)  The only shred of evidence suggesting a pretextual purpose

and discriminatory animus is a list of white employees who allegedly engaged in more egregious conduct than Plaintiff and received different discipline. (Pl.'s Mem. 17-30.)

The circumstances of the other employees Gibson disciplined differ materially from the circumstances of the letter of reprimand, and therefore cannot function as comparable comparators. See Rodriguez-Cuervos, 181 F.3d at 21. In particular, Gibson's incident with McCollum was based on hearsay, rather than direct interaction; Texeira's appeals to Furtado to escape work from Gibson did not involve disrespectful defiance of a supervisor's request; refusals to provide written statements and a letter of reprimand are too dissimilar for reasonable comparison. (R&R at 53-59.) "Human relationships are inherently complex. Large employers must deal with a multitude of employment decisions, involving different employees, different supervisors, different time periods, and an incredible array of facts that will inevitably differ among seemingly similar situations." Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1232 (10th Cir. 2000) (quoting E.E.O.C. v. Flasher Co., 986 F2d. 1312, 1319 (10th Cir. 1992)). The bald assertion that other employees refused to perform tasks when directed (Pl.'s Mem. 20) or engaged in other misconduct is insufficient to make them valid comparators in this case. See Dartmouth, 889 F.2d at 19.

11

Furthermore, even when the "non-Gibson" comparators are added to the mix, the incidents involving supervisors Furtado and Blythe do little to shore up Plaintiff's pretext argument. Blythe did not consider McCullum disrespectful, nor did the incident involve a refusal to perform particular duties, but rather a strong expression of opinion. (Pl.'s Resp. 19; Def.'s App. 15; Furtado Dep. 87:23-88:7). Similarly, Venable's cursing in front of the supervisors and Blythe's failure to discipline her for being "absent without leave" are not reasonably comparable to the circumstances of the chill incident. See Ney v. City of Hoisington, 264 Fed. Appx. 678, 683 (10th Cir. 2008) (finding refusal to meet with supervisors was not similar to cursing); Kendrick, 220 F.3d at 1232 (holding verbal abuse alone was not comparable to plaintiff's cursing combined with other conduct). Even if the alleged disruptive, disrespectful argument between Blythe and Venable was similar to Plaintiff's encounter with Gibson, the single incident falls woefully short of establishing competent evidence of racially motivated pretext to rebut Defendants' motion. See Mesnick, 950 F.2d at 822. Thus, even if the Magistrate Judge's consideration of Plaintiff's comparative evidence was erroneous, his ultimate recommendation was correct.

12

IV.   <u>Conclusion</u>

For the reasons discussed above, Plaintiff's objection is DENIED, and the Report and Recommendation issued on January 29, 2009 in the above-captioned matter is accepted in full pursuant to 28 U.S.C. 636(b)(1).

It is so ordered.


_____

William E. Smith
United States District Judge
Date: 7/15/09